Gerald Dent, a Minor, by Edward L. Dent, His Father and Next Friend, Plaintiff-Appellant, v. The Great Atlantic and Pacific Tea Company, and Harry L. Meyer, Defendants-Appellees.

Term No. 54-O-20.

Fourth District.

February 1, 1955.

Released for publication March 3, 1955.

Baltz & Guymon, of Belleville, and Philip G. Listeman, of East St. Louis, for appellant.

Johnson & Johnson, of Belleville, for appellees.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

The defendant, Harry L. Meyer, is the owner of premises in Belleville, Illinois, which are leased to the other defendant, The Great Atlantic and Pacific Tea Company. The plaintiff, Gerald Dent, aged 16, fell into a depressed driveway on the premises, while he was walking thereon at night. He suffered injuries for which he brought this suit, by his next friend, charging both defendants with wilful and wanton misconduct. Trial was started before a jury, but at the close of plaintiff's evidence, the court directed verdicts for the defendants, pursuant to their motions, and entered judgment in bar of suit.

The premises involved lie at the intersection of Illinois street, which runs north and south, and Van Buren street, which runs east and west. The store building thereon faces west thus fronting on Illinois street, and is set back some 70 or 80 feet from Van Buren, which is the north boundary of the lot. Back of the store there is a north-south alley through the block, parallel with Illinois street.

In this open space on the north side of the building, and near the back of the store, lies the driveway. It is perpendicular to the building wall and runs parallel with the alley from the building out to Van Buren street. Near the street it is level therewith, but from there to the building it slopes down between concrete retaining walls and, at the building wall, the driveway has reached the level of the basement floor. The lessor had reserved the basement for his own use, and the use of the drive for access thereto. The rest of the building and lot was leased to the corporate defendant.

502

The large rectangular area on the north side of the store building was paved back to the concrete wall which formed one side of the sloping driveway. The wall projected some inches above ground and on top and attached to it there was a metal fence. There was no fence on the east wall of the drive, which is toward the alley at the rear of the building.

This large paved area had a sign which read in substance, "Free parking for A & P customers." The remaining small open space east of the fence and driveway and between it and the alley, was not paved and had no sign. However, it had been covered with cinders, and was used as a parking area by employees of the store.

On the day of his injuries, early in the evening, the plaintiff arrived in the neighborhood in a car with his family and friends. The store was closed but their trip had nothing to do with the store or any business of either defendant. Their purpose was to attend a carnival or fair in the vicinity, some place southeast of the store. As they neared the A & P parking lot, they observed cars parked therein, and saw a vacant space in the northwest corner, at the intersection of Illinois and Van Buren streets. They parked the car in this space and proceeded to the fair.

It was common practice for the public to use this parking area after store hours. The manager was aware of this and thought it had some advertising value.

Upon leaving the family car, the plaintiff did not walk south on Illinois street past the front of the store. Instead, he walked east along Van Buren to the alley, and then went south through the alley behind the store. By this route he necessarily passed within a few feet of the sloping driveway, and it was not yet dark, but he did not observe the driveway and walls as he passed.

Some hours later, the party returned from the fair, with plaintiff walking some distance ahead of the

others. He proceeded north through the alley back of the store, but did not follow it all the way to Van Buren street. Instead, he turned onto defendant's premises at the corner of the building, intending to take a short cut diagonally across the space north of the building to the family car. Being unaware that his path was blocked by the sunken drive, he walked right into it, falling to the bottom at a point where it was about 8 feet deep.

Although the complaint in this case charged wilful and wanton misconduct, there is much argument in plaintiff's briefs to the effect that, in parking the family car on the A & P lot, the occupants had the status of invitees. Based on this claim that the plaintiff went on the premises by an implied invitation, it is here argued that defendants owed him a duty of due care. The defendants object to this line of argument as a departure from the issues, and also deny that plaintiff was an invitee.

 In our opinion, when the plaintiff went upon the parking lot solely for his own convenience, he was not an invitee. This court has previously held: "To come upon the premises under an implied invitation means more than a mere license, it means that the visitor is there for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on." Armster v. American Steel Foundries, 313 Ill. App. 378, 383. Cases cited to this point are: Pauckner v. Wakem, 231 Ill. 276; Plummer v. Dill, 156 Mass. 426, 31 N. E. 128; Illinois Cent. R. Co. v. Hopkins, 200 Ill. 122; Mallory v. Day Carpet & Furniture Co., 245 Ill. App. 465.

Both the Armster and Mallory cases above cited contain the following quotation which originated in Milauskis v. Terminal Ry. Ass'n of St. Louis, 286 Ill. 547, 555: "The distinction between a visitor who is a mere licensee and one who is on the premises by invitation

turns on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming."

 The plaintiff's failure to observe in daylight that the paved parking area under the sign was fenced off from the back part of the lot, is hardly an excuse for his subsequent attempt to cross private property in the dark. He might well be regarded as a trespasser at that time and place, but it is unnecessary to rule on that point, since the result would not be affected. "Permission involves leave and license but it gives no right. The permission or license is a justification for his entry, yet the duty of the owner to guard him against injury is governed by the rules applicable to trespassers." Jones v. 20 North Wacker Drive Bldg. Corp., 332 Ill. App. 382, 385; Milauskis v. Terminal Ry. Ass'n of St. Louis, 286 Ill. 547, 556.

Accordingly, the plaintiff is here regarded as having the status of a licensee, and the defendants' duty must be defined accordingly.

██ The general rule on this subject is thus commonly stated: "The owner or person in charge is ordinarily under no duty to use ordinary care to make or keep the property or premises in a reasonably safe condition for the use of licensees, or to keep the usual condition of the premises up to any particular standard of safety." 65 C. J. S. Negligence, p. 496, sec. 35 (d). Citing among others, Brett v. Century Petroleums Inc., 302 Ill. App. 99; Rokicki v. Polish Nat. Alliance, 314 Ill. App. 380.

The undisputed facts in this case indicate that defendants are guilty of nothing other than having an open pit on their property, which was not concealed in any way, and would have been plainly visible except for the darkness. The most often quoted passage on that subject is by Justice Holmes, in Reardon v. Thompson, 149 Mass. 267, 21 N. E. 369 as follows:

██ ██ "But the general rule is that a licensee goes upon the land at his own risk and must take the premises as he finds them. An open hole, which is not concealed otherwise than by the darkness of night, is a danger which a licensee must avoid at his peril."

██ The owners and lessees of premises owed to a mere licensee or trespasser no duty except not to wilfully injure him, and were under no duty to enclose an open hoistway or elevator well. Marcovitz v. Hergenrether, 302 Ill. 162.

██ There is no dispute as to essential facts in this case, and upon taking all the evidence in the light most favorable to plaintiff, it does not show any wilful and wanton misconduct by either defendant, hence, it was the duty of the trial judge to direct a verdict for defendants. Bartolucci v. Falleti, 382 Ill. 168; Morgan v. New York Cent. R. Co., 327 Ill. 339. The judgment on the directed verdicts for defendants is affirmed.

Judgment affirmed.

CULBERTSON, P. J. and BARDENS, J., concur.