**Fred Schoen, Plaintiff-Appellee, v. Raymond E. Harris, et al., Defendants-Appellants.**

Gen. No. 68–29.

Third District.

April 14, 1969.

Cassidy, Cassidy, Quinn & Lindholm, of Peoria, for appellants.

Chester Thomson, of Bloomington, and August Black, of Morris, for appellee.

STOUDER, P. J.

Plaintiff-Appellee, Fred Schoen, commenced this action in the Circuit Court of Tazewell County seeking damages for personal injury against Raymond Harris, Robert Brown and Stanley Schoen, Defendants-Appellants. At the close of plaintiff's evidence the court directed a verdict in favor of defendants on the first count of the complaint based on the negligence of defendants toward the plaintiff as a social guest. No error is assigned on this ruling. At the close of all the evidence, the court declined to direct a verdict in favor of defendants on the second count of the complaint based on wilful and wanton conduct of the defendants toward the plaintiff as a social guest. The issues raised by the second count of the complaint were submitted to the jury resulting in a verdict and judgment against defendants in favor of plaintiff in the sum of $10,000 from which judgment defendants have appealed.

The facts are largely undisputed. The defendants are three bachelors who leased and occupied a residence near Peoria, Illinois, the premises including an outdoor swimming pool. Plaintiff, Fred Schoen, is the father of Stanley Schoen, one of the defendants. On the day in question, Stanley Schoen invited his parents, his sister and her husband and their seven-year-old daughter to visit him. On the day of the visit, Harris and Brown had left the house and had gone elsewhere but were aware that Stanley Schoen had invited the members of his family to visit him. The parties ate lunch about 2:30 in the afternoon and at about 4 o'clock some of the members of the party went swimming, including plaintiff, Fred Schoen, but not including his son, Stanley Schoen. Plaintiff swam for about thirty minutes talking and playing with the other members of the party, which included his granddaughter. Near the end of this period he observed his granddaughter using a "bongo board" which was located on the concrete surface adjacent to the swimming pool.

188

The "bongo board" which was admitted into evidence, is an amusement or exercise device. It consists of two wooden pieces. The first is a circular roller about fifteen inches in length and about five inches in diameter. Midway between the two ends is a groove about one inch wide which encircles the roller. The second piece is an ordinary hardwood board eleven inches wide and thirty-six inches long. On the under side of the board is a wooden strip three quarters of an inch wide, three quarters of an inch deep and running the length of the board. The device is used by placing the board on the roller with the strip on the underside of the board fitting into the groove on the roller. By placing one's feet at either end of the board and by shifting one's weight from one foot to the other a "teeter-totter" effect results. Although the device appears to have no particular relation to swimming, the defendants indicated that the device was commonly used for amusement, for developing leg muscles and for improving balance.

When plaintiff's granddaughter called to him, plaintiff got out of the pool and walked to within a few feet of where his granddaughter was using the "bongo board." She got off the "bongo board" and plaintiff decided to try the device. He placed his left foot on one end of the board and shortly after placing his right foot on the board he "flipped," fell on the concrete surface and broke his hip. Neither Stanley Schoen nor either of the other defendants was present at the scene of the incident at the time it occurred. Two occurrence witnesses testified, plaintiff and his wife. The wife's testimony corroborates the events preceding the injury, i. e., the swimming, the use of the "bongo board" by the granddaughter, the getting on the "bongo board" by plaintiff and his fall.

In seeking to reverse the judgment of the trial court, defendants contend the trial court erred in denying their motion for a directed verdict at the close of the evidence and in denying their post-trial motion for judgment not-

189

withstanding the verdict. Defendants argue that as a matter of law the evidence is insufficient to support the conclusion that their conduct was wilful and wanton, that any misconduct of theirs proximately caused the injury to plaintiff or that plaintiff was free from contributory wilful and wanton conduct. Defendants also argue that the trial court erred in the giving or refusing of instructions but in so far as errors are claimed in instructions given in behalf of plaintiff, they are likewise based on insufficiency of evidence and are therefore necessarily related to the principal issues of the case.

With respect to wilful and wanton conduct, the complaint alleges in substance, one, that the defendants placed a bongo board near the edge of the swimming pool for use by their guests, two, that defendants invited the plaintiff to use the pool and the bongo board, three, that defendants knew or should have known that the plaintiff was not familiar with the operation of a bongo board and four, that defendants therefore had a duty to warn plaintiff of the nature of the operation of the bongo board since it presented a potentially dangerous condition to a person not familiar with it. The allegations of the complaint were incorporated as an issues instruction.

■■ Both parties concede that plaintiff's status was one of a social guest. The general rule is that an occupant of land has no duty to avoid or prevent injury to a licensee (which includes a social guest) but such occupant does have a duty to refrain from wilfully or wantonly injuring such licensee. Marcovitz v. Hergenrether, 302 Ill 162, 134 NE 85 and Dent v. Great Atlantic & Pacific Tea Co., 4 Ill App2d 500, 124 NE2d 360. It follows that an occupant has no general duty of reasonable care toward a licensee to make the premises safe or to discover unsafe conditions on the premises. The duty to refrain from wilful or wanton injury as applicable to licensees is distinguished from the duty of reasonable care owed to an invitee on the premises. By definition, a licensee is one

who goes upon the premises of another with the permission of the occupant either express or implied. Hence the occupant is chargeable with knowledge of the presence of a licensee at least to the extent that the licensee's presence is within the terms of the permission granted.

██ While the occupant may be under no duty toward a licensee to discover unsafe conditions on the premises where liability is predicated on a condition of the premises, as in the instant case, the occupant is under a duty to disclose or warn against hidden dangers of which he has knowledge. Kapka v. Urbasewski, 47 Ill App2d 321, 198 NE2d 570 and Snow v. Judy, 96 Ill App2d 420, 239 NE2d 327. Failure to do so may constitute wilful and wanton conduct as defined in IPI Instruction 14.01. No spirit of ill will either general or specific is required, it being deemed that the failure to disclose known dangerous conditions is a conscious disregard or indifference to the safety of others rightfully on the premises.

██ Whether the trial court erred in failing to enter judgment in favor of defendants notwithstanding the verdict of the jury, is determined by application of the Pedrick rule (Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504) and requires a consideration of all the evidence, together with the reasonable inferences which may be drawn therefrom viewed most favorably to the plaintiff.

It is plaintiff's theory that defendants were under a duty to warn plaintiff about the dangers of the "bongo board" because its probable use constituted a known concealed dangerous condition. If, as defendants argue, the bongo board did not constitute a concealed dangerous condition, no duty arose and liability cannot be predicated upon the violation of a nonexistent duty. It is undisputed that the "bongo board" was located near the swimming pool and that it was placed there by one of the defendants with the knowledge of the others. It is equally undisputed that there were no conversations between the parties

191

prior to the incident regarding the "bongo board" and consequently, it cannot be said that there was any specific permission to use such device. However, we are disposed to hold that there is sufficient evidence from which it may be inferred that the permission to use the swimming pool included the implied permission to use the "bongo board." We do not believe it can be said as a matter of law, that plaintiff's use of the "bongo board" was unforeseen or unexpected or that its use was beyond the terms of the specific permission to use the swimming pool.

No claim is made that the "bongo board" was defective or that its mere presence near the pool constituted an unsafe condition affecting the use of the pool.

Defendants argue that the "bongo board" was not inherently dangerous or a dangerous instrumentality, citing Maramba v. Neuman, 82 Ill App2d 95, 227 NE2d 80 (boomerang) and Pitts v. Basile, 35 Ill2d 49, 219 NE2d 472 (dart). Plaintiff's response to this contention is, at best, ambiguous. In his points and authorities the following appears, "Point 2, It is necessary to warn of dangerous instrumentality and failure to do so may constitute wilful and wanton misconduct." Such statement is not thereafter referred to in plaintiff's argument under point 2 but such argument includes the following statement, "Plaintiff did not in the trial court nor does he now contend that the bongo board is, under the law, a dangerous instrumentality." Plaintiff admits that the device may not be inherently dangerous but insists that his claim is not based on any such theory. Such admission is perhaps more technical than real since plaintiff refers to the device in his brief as a "dangerous instrumentality," "dangerous condition" or "tricky device." As plaintiff points out, "a place of danger" or a "dangerous condition" does not depend upon the existence or presence of an inherently dangerous object. By way of analogy plaintiff suggests that a rake, an otherwise harmless device, if

192

lying concealed in the grass with the prongs upward does create a dangerous condition. While it may be true that as in the foregoing analogy an otherwise harmless object might be involved, the analogy illustrates and emphasizes that an occupant's duty is based on the existence of a hidden concealed dangerous condition.

█ Plaintiff characterizes the "bongo board" as an innocent appearing device which conceals its tricky nature. However, we believe that such characterization is neither supported by any direct evidence nor by reasonable inferences which may be drawn from the evidence. To be sure, it is an innocent appearing device but there is nothing in its nature, a board and a roller, which conceals the method of its operation. Of utmost significance however is the testimony of the plaintiff himself. He observed that the device consisted of a board and roller, had observed his granddaughter using the device and was aware that one used the device as a "teeter totter." The conditions affecting the use of the device were readily apparent to plaintiff and there is nothing in his testimony from which a contrary inference is possible. Hamilton v. Faulkner, 80 Ill App2d 159, 224 NE2d 304. Plaintiff voluntarily used the device and it operated as he expected it to. Murphy v. White City Amusement Co., 242 Ill App 56. Under the circumstances we believe that there is an entire failure of evidence from which it can reasonably be inferred that the use of the "bongo board" constituted a concealed dangerous condition and as a consequence of such conclusion no duty was imposed upon defendants with respect thereto.

For the foregoing reasons the judgment of the Circuit Court of Tazewell County is reversed.

Judgment reversed.

ALLOY and SCHEINEMAN, JJ., concur.