MICHAEL R. STEPHEN, Plaintiff-Appellant, v. MARGARET SWIAT-
KOWSKI, Defendant-Appellee.

First District (5th Division)   No. 1—92—0547

Opinion filed May 27, 1994.

James N. Vail, of Chicago, for appellant.

Rigsby & McAuley, of Chicago (John G. McAuley, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Michael R. Stephen, filed this action in the circuit court of Cook County seeking damages for personal injuries allegedly sustained as a result of the negligence of defendant, Margaret Swiatkowski. Plaintiff appeals from the circuit court's order granting summary judgment in defendant's favor.

## FACTS

Except as noted below, the facts in this case are undisputed. On or about August 8, 1984, the home of defendant, Margaret Swiatkowski, was damaged by fire. Defendant extended an invitation to the National Broadcasting Company (NBC) to visit the premises to present a television news report on the fire which was thought to have been deliberately set for racial reasons. On August 10, 1984, plaintiff, Michael Stephen, and two fellow NBC employees, a cameraman and a reporter (hereinafter the news team), were assigned to cover the story. Plaintiff was the sound man. His on-site duties were to record the video signals from the camera and "mix the audio for interviews or extraneous noise." This necessitated his carrying a 32-pound videotape recorder connected by cable to the camera which the cameraman held.

The news team arrived at defendant's house on the morning of August 10, approximately 10 to 15 minutes before defendant and John Danno arrived. John Danno was a realtor allegedly involved in Mrs. Swiatkowski's purchase of the house. While the news team waited, plaintiff noticed that the structure appeared intact, except for a hole in the left side of the roof. The windows were boarded and there was burned clothing and furniture on the front lawn. When defendant and Mr. Danno arrived, the news team filmed the exterior of

the house and conducted an interview with defendant on the front lawn.

According to plaintiff's deposition, upon being asked about the condition of the interior, defendant stated that it was "burned out but still able to enter" and that she and Mr. Danno had been inside. Defendant then invited the news team to go inside and told them it was safe to go into the house. According to plaintiff's deposition, when the back door was opened he saw charred walls and hanging electrical wires. He then asked defendant if she was sure it was safe to enter. Defendant answered, "Yes, it is." Although defendant's unverified answer denies that she made any representation as to the safety of the premises, we note that this disputed fact is not dispositive on the question of whether summary judgment was proper.

It is undisputed that the news team walked with defendant through the kitchen, where plaintiff noticed no debris on the floor. They then proceeded to the dining room. There, plaintiff noticed that the walls had been severely charred, the windows were boarded, and the room was "fairly dark." At this point, plaintiff first noticed charred debris on the floor. Plaintiff stated in his deposition that he could not clearly see the floor, but he noticed no nails or metal on its surface. Except for a small amount of sunlight coming around the window boards, the only light in the room was a small 30-volt, 120-watt light bulb, like a small spotlight, attached to the camera. The camera light illuminated only the space directly ahead of them but not the floor at their feet. When the cameraman finished filming in the dining room, he wanted to proceed to the living room at the front of the house. Plaintiff was leading the cameraman who, because of the equipment he was carrying, could not see where he was going. Plaintiff, taking a step backward in preparation to lead the cameraman into the next room, stepped on a nail protruding approximately one inch from a board on the floor. The nail penetrated plaintiff's shoe and foot, causing nerve damage to the foot.

When asked during his deposition why he asked defendant for reassurance as to the safety of the house before entering, plaintiff stated, "Because I don't go into burned down buildings, and I know what could possibly happen." Plaintiff also stated that he entered the dining room cautiously with an awareness of potential danger, watching the entire room. When asked if he exercised caution of his own and didn't rely completely on defendant's statement, plaintiff replied "Based on my years of experience of being out doing different stories, I have exercised my own judgment." Plaintiff also admitted that, if he had looked directly at the floor where he stepped, he would have noticed the nail protruding from the board.

Plaintiff filed a complaint against defendants Margaret Swiatkowski and John Danno alleging damages from injury proximately caused by defendants' negligently maintaining the premises in a dangerous condition by permitting a board containing a nail to remain on the floor and by failing to warn plaintiff about it. A voluntary dismissal was subsequently granted as to John Danno. Defendant filed a motion for summary judgment to which plaintiff's deposition was attached. The trial court granted the motion, finding that plaintiff was a licensee on defendant's premises and that the board with the protruding nail was an open and obvious condition. This appeal followed denial of plaintiff's motion to reconsider.

## OPINION

On appeal, plaintiff contends that the trial court erred in determining as a matter of law that plaintiff's status was that of licensee rather than invitee and that the nail in the board was an open and obvious condition. Plaintiff also contends that, even if the latter determination had been correct, defendant nevertheless had a duty of reasonable care toward plaintiff because defendant should have anticipated that plaintiff would be distracted from noticing the dangerous condition. Lastly, plaintiff contends that by assuring plaintiff that the premises were safe, defendant voluntarily assumed a duty of care independent of plaintiff's status.

■ Summary judgment is proper only where, construing the pleadings, affidavits, admissions, and depositions strictly against the movant and liberally in favor of the opponent, " 'there is no genuine issue as to any material fact' " and the movant is " 'entitled to a judgment as a matter of law.' " (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, quoting Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c); see also *Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 293, 560 N.E.2d 586.) "[I]t is a remedy to be awarded with some caution so as not to preempt the right to a trial by jury or the right to fully present the factual basis of a case wherein a material dispute may exist." (*Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 642, 411 N.E.2d 1168.) Even where the facts are undisputed, a triable issue exists if fair-minded persons could draw different inferences from the facts. (*Schoondyke*, 89 Ill. App. 3d at 642.) Summary judgment should be entered only where the movant's right to judgment is "clear and free from doubt." *Gatlin*, 137 Ill. 2d at 293.

■ We note at the outset that in 1984 the Illinois General Assembly abolished the distinction between licensee and invitee in establishing the duty of care owed by an owner or occupier of a premises to those who enter. By statute an owner or occupier now

owes the duty of reasonable care under the circumstances (740 ILCS 130/2 (West 1992).) However, that statute does not apply in the present case because the injury occurred prior to the September 12, 1984, effective date of that statute. (See *Lorek v. Hollenkamp* (1986), 144 Ill. App. 3d 1100, 1102-03, 495 N.E.2d 679; *Zimring v. Wendrow* (1985), 137 Ill. App. 3d 847, 851, 485 N.E.2d 478.) Because the distinction between a licensee and an invitee remains material to this appeal, it must first be determined whether plaintiff's status as either licensee or invitee is ascertainable in this case as a matter of law.

An invitee has been defined as "a person who goes upon the premises of another by an express or implied invitation to transact business in which he and the owner have a mutual interest or to promote some real or fancied material, financial, or economic interest of the owner." (*Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 87, 343 N.E.2d 261.) An owner or occupier of property has a duty to invitees to use reasonable care to maintain the premises in a reasonably safe condition. *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 437, 566 N.E.2d 239; *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 141, 554 N.E.2d 223.

A licensee, on the other hand, is "one who enters upon the premises of another by permission for his own purposes." (*Kapka v. Urbaszewski* (1964), 47 Ill. App. 2d 321, 325, 198 N.E.2d 569. See also *Trout*, 36 Ill. App. 3d at 87.) The possessor of land has no general duty of reasonable care to make the premises safe for a licensee or to discover an unsafe condition. The only duty owed is to refrain from wilfully or wantonly injuring a licensee. *Schoen v. Harris* (1969), 108 Ill. App. 2d 186, 190, 246 N.E.2d 849.

While it is true that an invitee enters upon the premises in response to an express or implied invitation to do so, that fact alone does not determine the duty of a possessor of land. (*Kapka*, 47 Ill. App. 2d at 325.) Often a licensee also has an invitation to enter. (See, *e.g.*, *Schoen*, 108 Ill. App. 2d at 190 (social guest who was invited by the possessor was a licensee).) Whether a visitor is a licensee or an invitee "turns on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming." *Pauckner v. Wakem* (1907), 231 Ill. 276, 280, 83 N.E. 202. See also *Jones v. 20 North Wacker Drive Building Corp.* (1947), 332 Ill. App. 382, 385, 75 N.E.2d 400.

The determinative factor in distinguishing between an invitee and a licensee is the purpose of the entry, *i.e.*, whether the plaintiff enters only for his own purpose or for the purpose of transacting business of mutual interest to the parties or to promote some material, financial, or economic interest of defendant. (See *Trout*, 36 Ill.

App. 3d at 87.) To be an invitee, a person must come on the premises to transact business in which the parties are mutually interested. (*Olsen v. Chicago Dock & Canal Co.* (1972), 5 Ill. App. 3d 1105, 1108, 284 N.E.2d 443.) In *Olsen*, the plaintiff was permitted to use a portion of defendant's plant for plaintiff's business without paying any rent. Although the plaintiff was also a customer of defendant, his presence on defendant's premises was that of licensee because the rent-free arrangement stemmed from the friendship of the parties rather than from their business relationship. See also *Madrazo v. Michaels* (1971), 1 Ill. App. 3d 583, 587, 274 N.E.2d 635, wherein the court stated the rule in Illinois:

> "[T]he trend in modern English and American law is away from economic activity or benefit as the exclusive test of invitee status on the land of another. \*\*\*
>
> Illinois decisional law supports the rule that a person is an invitee on the land of another if (1) he enters by invitation, express or implied, (2) his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land and (3) there is a mutuality of benefit or a benefit to the owner. [Citations.] The status of an invitee does not depend on whether the invited person is to gain an advantage or benefit from his entry; it is sufficient that [he] go on the land in furtherance of the owner's business or an activity he conducts or permits on the premises."

In *Madrazo*, owners of a home had asked a relative to assist them in moving into the home. The relative was considered an invitee because she came in furtherance of an activity the owners were conducting on the property (the moving activities) and the owners benefited from her labor. See *Madrazo*, 1 Ill. App. 3d at 588.

Defendant contends that the news report did not further her economic or other material interests. Plaintiff admitted in his deposition that defendant would have received no remuneration from NBC. At the hearing on the summary judgment motion, defendant showed the trial court, without objection, a videotape containing some of the footage shot at the house that day. While the videotape is not part of the record, a one-page transcript of the conversation on the tape is in the record. In that transcript, the reporter states "Mrs. Swiatkowski says she plans to rebuild immediately on the property." Plaintiff contends that this statement demonstrates that defendant's purpose in inviting the news team to her house was to achieve a material and economic benefit, namely, to safeguard her home from future incidents during the rebuilding process by garnering public attention to the fire and its cause. Based on this purpose plaintiff concludes he was an invitee.

In instances where the facts are undisputed, a plaintiff's status as licensee or invitee may be determined as a matter of law. (See, *e.g.*, *Lorek*, 144 Ill. App. 3d at 1102 (trial court justified in finding plaintiff to be licensee as a matter of law where there was no dispute that a meeting in the defendant's home was solely for the purpose of discussing church business rather than any business of the defendant).) It is only where facts are disputed, or where the facts are not in dispute but different inferences may be drawn from those undisputed facts, that a plaintiff's status becomes a question of fact to be resolved by the jury. (*Avery v. Moews Seed Corn Co.* (1971), 131 Ill. App. 2d 842, 845-46, 268 N.E.2d 561; *Drews v. Mason* (1961), 29 Ill. App. 2d 269, 273-74, 172 N.E.2d 383.) Since the facts which bear on the determination of plaintiff's status in this case are undisputed, we must determine whether reasonable minds could differ as to the inferences to be derived from those facts.

■ Here, it is undisputed that plaintiff came to defendant's home to prepare a news report about the possibility that defendant's home had been deliberately torched for racial motives. There is no question that the visit was intended to fulfill a purpose connected with plaintiff's business of reporting newsworthy events to the public, since a report of this nature is of apparent public interest and concern. It is also undisputed that defendant received no remuneration. Although plaintiff contends that defendant's motivation was to protect her property from subsequent damage because she planned to rebuild, there is nothing in the record to support that contention, other than the remote inference to be derived from the bland assertion of the reporter in the aforementioned one-page transcript of his news coverage. Even if defendant were possibly to gain some future incidental protection of her property through the resultant publicity, the benefit to be derived would be too remote and uncertain to lead to the conclusion that plaintiff entered defendant's premises for a material or economic purpose of defendant.

The case of *Jones v. 20 North Wacker Drive Building Corp.* (332 Ill. App. 382, 75 N.E.2d 400) is illustrative. There, the defendant opera house allowed the plaintiff, a member of the drama league, to sell war bonds in its lobby. The plaintiff contended that she was an invitee because the defendant had a pecuniary interest in the sale of the government bonds because it risked loss of good will and patronage if it did not allow such sales on its premises. (*Jones*, 332 Ill. App. at 386.) The reviewing court found the plaintiff to be a licensee, noting that there was no support in the record for the contention that the defendant was obliged to allow the sale of bonds to promote good will. (*Jones*, 332 Ill. App. at 388.) The court, in concluding that the

defendant's interest was the same as that of the public in general, wrote:

"[T]he entry of the person upon the premises of another must be in connection with the business of the owner conducted thereon to transform a licensee into an invitee. This necessarily means the personal business of the owner or occupant of the land and not the general business of the public in which the interest of the owner or occupant can be no greater or different than that of others constituting the general public." *Jones,* 332 Ill. App. at 387.

The Missouri case of *Roe v. St. Louis Independent Packing Co.* (1920), 203 Mo. App. 11, 217 S.W. 335, is also similar to the present case. In *Roe,* a group of children sponsored by the YMCA toured the defendant's packing plant. It was admitted that the purpose of their visit was educational. However, the plaintiff, a child injured during the visit, contended that he should be considered an invitee because the defendant stood to derive an advertising benefit from the visit by virtue of the fact that the visitors were potential future customers and would tell other potential customers of the health measures used in the plant. The court found that this alleged benefit was not sufficient to raise the visitor's status from licensee to invitee. *Roe,* 203 Mo. App. at 20-21, 217 S.W. at 337. See also *Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill. App. 2d 500, 503-04, 124 N.E.2d 360 (plaintiff who parked in grocery store lot after store hours was licensee although store manager knew lot was used regularly after hours and believed such use had advertising value for the store).

Here, too, as in the cases cited above, the nature of prospective benefit to defendant as urged by plaintiff is too remote and speculative to confer invitee status upon plaintiff. The only conclusion warranted from the submissions of the parties is that the benefit derived by defendant was substantially the same benefit as that derived by members of the public who viewed the report on television. Thus, the trial court correctly found, as a matter of law, that plaintiff was a licensee.

Having determined that plaintiff was a licensee, we turn to the question of whether, as a matter of law, it can be determined that defendant did not breach the duty of care owed to a licensee. As stated earlier, that duty is merely the duty to refrain from wilfully or wantonly injuring a licensee. (*Schoen,* 108 Ill. App. 2d at 190.) Wilful and wanton conduct involves "a course of action which shows either deliberate intention to harm or utter indifference to, or conscious disregard for, the safety of others." (*O'Donnell v. Electro-Motive Division of the General Motors Corp.* (1986), 148 Ill. App. 3d 627, 635, 499 N.E.2d 608; *Kapka,* 47 Ill. App. 2d at 324.) The occupier of land has

no duty to a licensee to make the premises safe or to discover an unsafe condition. (*Schoen v. Harris* (1969), 108 Ill. App. 2d at 190.) While the failure to warn a licensee of a concealed danger known to the possessor of land may constitute wilful and wanton conduct, "[a] licensee must avoid open or obvious danger at his peril." *Lorek*, 144 Ill. App. 3d at 1103.

A condition is considered to be open and obvious where " 'the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " (*Deibert*, 141 Ill. 2d at 435, quoting Restatement (Second) of Torts § 343A, Comment B (1965).) Examples of open and obvious conditions include a tire rut at a construction site (*Deibert*, 141 Ill. 2d at 438), a missing pier plank, although hidden by darkness (*Hessler v. Cole* (1972), 7 Ill. App. 3d 902, 906, 289 N.E.2d 204), a chain habitually placed across a parking lot entrance at night (*Trout*, 36 Ill. App. 3d at 89), and a drop-off from a sloping driveway in a parking lot (*Dent*, 4 Ill. App. 2d at 502-03).

■ In the present case, plaintiff admitted in his deposition that he would have seen the protruding nail if he had only looked down at it. (See *Deibert*, 141 Ill. 2d at 434 (tire rut on construction site was open and obvious where plaintiff stated he would have seen it if he had watched where he was walking).) There is no indication that the danger was hidden in any way. That it was dark in the room where the injury occurred does not render the condition a concealed one. See *O'Donnell*, 148 Ill. App. 3d at 635 ("our courts have repeatedly held that it is not wilful and wanton misconduct for a landowner to fail to warn a licensee of a dangerous condition concealed only by darkness since such a danger is not considered hidden"); *Hessler*, 7 Ill. App. 3d at 906; *Dent*, 4 Ill. App. 2d at 505-06 (quoting Justice Holmes in *Reardon v. Thompson* (1889), 149 Mass. 267, 268, 21 N.E. 369, 370, "An open hole, which is not concealed otherwise than by the darkness of night, is a danger which a licensee must avoid at his peril").

We conclude that reasonable minds could not differ that the board with the protruding nail and the risk threatened by it were apparent and would have been recognized by a reasonable person in the exercise of "ordinary perception, intelligence, and judgment." (See *Deibert*, 141 Ill. 2d at 435.) Thus, the trial court did not err in finding as a matter of law that the board with the protruding nail was an open and obvious condition.

Furthermore, even if the condition had been concealed, we note that there is no basis in the record from which to infer that defendant had any knowledge of the danger. Nor is there any showing

that defendant had access to information to which the plaintiff did not have equal access. The duty to warn a licensee of a concealed condition is premised on the possessor's superior knowledge of the condition. (*Mentesana v. LaFranco* (1979), 73 Ill. App. 3d 204, 209, 391 N.E.2d 416 (no duty to warn licensee where licensee had same knowledge of the condition as possessor or any other person would have had).) Only where the dangerous condition is concealed from the licensee, but known to the possessor of land, is there a duty to warn the licensee. See *Schoen*, 108 Ill. App. 2d at 191; *Kapka*, 47 Ill. App. 2d at 325.

 Plaintiff urges that defendant had a duty to find the danger and warn him of it because a reasonable person should have foreseen that plaintiff could be distracted from noticing the board and nail because he was carrying heavy equipment and leading the cameraman. While several cases impose such a duty on a possessor of land, we note that this duty is owed only to invitees. (See *Shaffer v. Mays* (1986), 140 Ill. App. 3d 779, 782, 489 N.E.2d 35; *Ward*, 136 Ill. 2d at 148; Restatement (Second) of Torts § 343 (1965) ("A possessor of land is not liable to his *invitees* for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness"). (Emphasis added).) Since we have already determined that plaintiff was not an invitee, this argument fails.

Finally, plaintiff contends that, regardless of his status on defendant's premises, defendant owed him a duty of reasonable care because she stated that the house was safe to enter. While we note that defendant in her answer denied making any statement that the house was safe to enter, that there may be a dispute as to whether the statement was made is not dispositive of the motion for summary judgment. For purposes of determining whether the summary judgment was proper, we shall assume that defendant made the statement.

Plaintiff relies on Illinois cases which state that "liability can arise from the negligent performance of a voluntary undertaking." (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769; *Martin v. McDonald's Corp.* (1991), 213 Ill. App. 3d 487, 490, 572 N.E.2d 1073.) Where one assumes a voluntary undertaking, there is a duty to exercise due care and "such competence and skill as [one] possesses." (*Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 317, 412 N.E.2d 472; *Nelson*, 31 Ill. 2d at 74.) Plaintiff contends that a statement that the house was safe can, by itself, impose this duty on defendant for the protection of plaintiff.

In each of the cases cited by plaintiff where such a duty is imposed, the defendant had done more than merely make a representation of safety. For instance, in *Martin,* defendant McDonald's Corporation had designated a corporate branch to deal with security problems at its lessee restaurants, had prepared a security procedures manual, and had undertaken security inspections and follow up at the various restaurants. The court held that McDonald's had voluntarily assumed a duty of care by these actions. (*Martin,* 213 Ill. App. 3d at 492.) In *Cross* (82 Ill. 2d 313, 412 N.E.2d 472), defendant housing authority had voluntarily assumed a duty of care for tenants by hiring a security service to protect them. Similarly, in *Slager v. Commonwealth Edison Co.* (1992), 230 Ill. App. 3d 894, 595 N.E.2d 1097, defendant had encouraged independent pipefitters to cross a picket line by assuring their safety and securing the presence of police to protect them. (See also *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038 (defendant housing authority assumed voluntary duty of care by closing off certain floors of building where criminal acts had previously taken place); *Nelson,* 31 Ill. 2d 69, 199 N.E.2d 769 (insurer assumed voluntary duty of care by making regular inspections of insured's premises, recommending safety measures, and by advertising its safety expertise available to its insureds).) In each case where a duty was imposed based on a voluntary undertaking, there were affirmative acts taken by defendant and allegations of negligent performance of those undertakings, not merely a representation of safety. As such, those cases are distinguishable from the present case where no affirmative acts were undertaken.

Furthermore, where a duty of care is imposed by reason of a voluntary undertaking, breach of that duty can be found only where there is misfeasance rather than nonfeasance, unless plaintiff can show that he reasonably relied on the defendant for protection. This distinction between nonfeasance and misfeasance was discussed in *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80. In that case, plaintiff, a tenant in defendant's building, fell when she stepped on icy steps which had not been cleared. The defendant had, for the preceding 15 years, always cleared the steps before the tenant left for work. The court found that, had defendant begun clearing the steps that day, he would have had a duty to perform that task with reasonable care and liability would have resulted from misfeasance, the negligent performance of the task. (*Chisolm,* 47 Ill. App. 3d at 1006.) However, the court stated that "liability for nonfeasance in connection with a gratuitous undertaking may arise where the beneficiaries had relied on its performance." (*Chisolm,* 47 Ill. App. 3d at

1007.) The court noted that to justify reliance, a plaintiff must be "unaware of the actual circumstances and not equally capable of determining such facts." (*Chisolm*, 47 Ill. App. 3d at 1007.) The court, in finding that there was no liability because the plaintiff's reliance on prior acts by the defendant was not justified or reasonable under the circumstances, noted, "Defendants did nothing to prevent plaintiff from obtaining information as to the conditions or from taking precautionary steps on her own behalf." *Chisolm*, 47 Ill. App. 3d at 1008.

■ In the present case, plaintiff seeks to impose liability for defendant's failure to make the premises safe or warn plaintiff of the dangerous condition, rather than for defendant's negligent performance of that undertaking. Defendant did nothing to prevent plaintiff from observing the condition of the premises. Plaintiff, in his deposition, gave detailed information as to what he observed about the condition of the house, including dangling electrical wires, charred walls, and debris on the floor. Plaintiff stated in his deposition that he exercised his own judgment when he went through the home, based on his experience in covering news events and his awareness of the potential dangers in a burned-out house. It is clear under these circumstances that reasonable minds could not differ in concluding that any reliance upon defendant's representations, in the face of what plaintiff observed, would not have been reasonable.

For the foregoing reasons, the judgment of the circuit court of Cook County granting summary judgment in defendant's favor is affirmed.

Affirmed.

MURRAY, P.J., and COUSINS, J., concur.