JERNIGAN v. N.C. DIV. OF PARKS AND RECREATION

[124 N.C. App. 748 (1996)]

FRANCES G. JERNIGAN, Plaintiff v. N.C. DIVISION OF PARKS AND RECREATION, Defendant

No. COA95-692

(Filed 17 December 1996)

### 1. State § 55 (NCI4th)— Industrial Commission—findings of fact irrelevant—surplusage

The Industrial Commission's finding of fact as to when a state park was notified of the plaintiff's accident was irrelevant and had no bearing on the plaintiff's case; therefore the finding was disregarded as surplusage.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 675 et seq.**

### 2. State § 55 (NCI4th)— Commissioner is the arbiter—state park—protruding nail—conflicting testimony

As the arbiter of the credibility of witnesses and the weight given their testimony, the Industrial Commission was entitled to resolve the conflict in a witness's testimony. The witness, a park superintendent, testified to varying lengths of a nail which plaintiff tripped over while visiting the park.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 675 et seq.**

### 3. State § 55 (NCI4th)— state park—protruding nail—absence of notice

The Industrial Commission's findings that park employees did not have notice the nail plaintiff tripped upon was protruding from the boardwalk was supported by the evidence.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 675 et seq.**

### 4. State § 55 (NCI4th)— procedure for inspection—superintendent's testimony—state park

The Industrial Commission properly found that there was evidence of a firmly established opening routine and a reasonable procedure for inspecting the boardwalk where plaintiff's claim was that she tripped over a nail protruding from a boardwalk at a state park. The evidence in the record revealed employees walked down the boardwalk daily to open the bathhouse, and

that in the course of this routine the attendant on duty would conduct a general visual inspection of the park. Further, the superintendent of the park testified that in his eleven years of employment at the park, which had accommodated over 10,000,000 visitors during that time, there had been no reports of individuals tripping over nails or being injured on a nail.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 675 et seq.**

5. **State § 36 (NCI4th)— defendant not negligent—contributory negligence finding unnecessary**

The Court of Appeals declined to address the Commission's finding regarding the contributory negligence of plaintiff because a finding of negligence on the part of plaintiff was not necessary to uphold the Commission's decision where it was properly determined that defendant, the park itself, had not acted in a negligent manner.

**Am Jur 2d, Municipal, County, School, and State Tort Liability § 151.**

6. **State § 35 (NCI4th)— Industrial Commission—findings of fact—State not negligent for failure to warn**

There was evidence in the record to support the Industrial Commission's findings of fact and conclusions of law to the effect that defendant state park was neither negligent in its maintenance of a boardwalk nor in its failure to warn of the possibility of protruding nails therein where the plaintiff was injured after tripping over a protruding nail.

**Am Jur 2d, Municipal, County, School, and State Tort Liability § 145.**

Appeal by plaintiff from Decision and Order filed 20 March 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 February 1996.

*McLeod, Hardison & Harrop, by Donald E. Harrop, Jr., for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Don Wright, for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals a ruling of the North Carolina Industrial Commission (the Commission) denying her claim against defendant N.C. Division of Parks and Recreation for damages allegedly suffered upon tripping over a raised nail on a boardwalk at Fort Macon State Park on 9 November 1991. We affirm the Commission.

The standard governing our review of decisions of the Commission is quite limited. If there is any competent evidence in the record to support the Commission's findings of fact, they must be upheld; further, if the Commission's findings of fact support its conclusions of law and decision, they will not be overturned. *Smith v. N.C. Dept. of Nat. Resources*, 112 N.C. App. 739, 743, 436 S.E.2d 878, 881 (1993), *disc. review denied*, 336 N.C. 74, 445 S.E.2d 37 (1994).

**[1]** Plaintiff initially objects to several of the Commission's findings of fact. First, she contends there is no evidence to support its finding that:

> 4. . . . Mrs. Fields [plaintiff's sister] testified that she did not contact any park employee on Saturday to report the serious fall of her sister nor did she indicate to the park employee on Sunday anything more than just that her sister had fallen and was hurt as a result of the fall. There was nothing to prevent Mrs. Fields or any of the plaintiff's companions from reporting to the ranger on duty on the date of the accident what happened to the plaintiff in specific detail.

Plaintiff's objection is supported by the uncontradicted testimony of Edith Fields, not cited by the Commission, that she returned to the park on Saturday, the day of the accident, after taking her sister to the hospital, yet was unable to locate a park employee so as to report the accident. It was only when she again went to the park on Sunday that she located such an employee.

However, the cited findings of fact have no bearing on plaintiff's case. The Commission's finding that the park was notified the day following the accident rather than on the day it occurred is irrelevant to the outcome, as is that addressing whether plaintiff's companions described the accident "in specific detail" to the park employee on duty. Thus, assuming *arguendo* finding of fact number four is erroneous, it may be disregarded as surplusage and the Commission's Decision and Order nevertheless upheld.

[2] Plaintiff next objects to the Commission's finding that: "According to Mr. Murphy [the park attendant], the nail [upon which plaintiff tripped] was a little less than one-quarter inch high . . . ." This finding is supported by competent evidence. Admittedly James Patrick Murphy (Murphy) originally said the nail was half an inch high when asked by Park Superintendent Jody Merritt (Superintendent Merritt) to give information about the accident. However, when requested at his deposition to draw a representation of the distance the nail protruded from the boardwalk, Murphy drew a line slightly less than a quarter inch in length. The Commission, as the arbiter of the credibility of witnesses and the weight given their testimony, *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993), was entitled to resolve the conflict in Murphy's testimony and adopt the latter description of the length of the nail.

[3] Plaintiff also contends the Commission erred in finding that:

9. There was no evidence directly or indirectly which would indicate that the defendant or any of its employees or agents had notice, either directly or implied, of any protruding nail located on the bathhouse boardwalk prior to the plaintiff's fall.

Plaintiff argues park employees admitted seeing raised nails in the boardwalk on occasions prior to her fall. The record supports plaintiff's assertion, and the Commission made findings stating as much. However, it is apparent the finding at issue refers to the park employees' lack of notice that the *actual* nail plaintiff tripped upon was protruding from the boardwalk. Thus interpreted, the Commission's finding is supported by the record.

In addition, plaintiff assigns error to the following finding of fact:

10. The defendant had in place a means of reasonable inspection of the bathhouse early in the morning and walking down this boardwalk looking for unsafe conditions. It was not necessary for the defendant to have written procedures as to nail checking in effect in view of the fact of the firmly established opening routine by the rangers and the lack of any reported accidents to the defendant caused by protruding nails other than that of the plaintiff. The defendant conducted reasonable inspections for protruding nails as evidenced by only the plaintiff's reported fall in the context of 10,000,000 visitors during the tenure of park Superintendent Merritt.

Plaintiff denies there existed evidence of a "firmly established opening routine" and a reasonable procedure for inspecting the boardwalk. To the contrary, competent evidence in the record reveals that employees walked down the boardwalk daily to open the bathhouse, and that in the course of this routine the attendant on duty would conduct a general visual inspection of the park. If a nail was discovered sticking out of the boardwalk, the attendant would hammer it down or ask another employee to do so. Further, Superintendent Merritt testified that in his eleven years of employment at the park, which had accommodated over 10,000,000 visitors during that time, there had been no reports of individuals tripping over nails or being injured on a nail. These findings, sustained by evidence in the record, support the additional finding that the park had in place a reasonable system of identifying and remedying raised nails.

[4] Plaintiff insists, without citation, that "lack of prior injury does not prove lack of negligence." Certainly the use of "nonoccurrence evidence" to establish lack of negligence is problematical in any case, in that there may have been a number of similarly injured individuals injured who simply failed to come forward. *See* Paul R. Rice, *Evidence: Common Law and Federal Rules of Evidence* § 3.02 at 193 (2d ed. 1990). Moreover, some may have complained, but not to the individual testifying on the defendant's behalf. *Id.* at 194.

> Because each of these possibilities significantly lowers the relevance of nonoccurrence evidence, courts have required that the number of potential occurrences be sufficiently high to create a probability that someone would have complained to the person testifying about the nonoccurrence of complaints if a basis for a complaint, such as a defective condition, existed.

*Id.*

However, in the case *sub judice*, the presence of over 10,000,000 visitors in the park during the tenure of Superintendent Merritt establishes an extremely high probability that he would have been notified if protruding nails were indeed causing injuries among the park's clientele. The lack of such reports during Superintendent Merritt's employment thus was properly considered by the Commission to support its finding that the park had in place a reasonable means of inspecting the boardwalk for nails.

[5] Plaintiff next objects to the Commission's statement in finding of fact number eleven that plaintiff was contributorily negligent. *See*

*Smith,* 112 N.C. App. at 745, 436 S.E.2d at 882 (invitee has duty to use ordinary care to protect herself and discover obvious dangers). A finding of negligence on the part of plaintiff is not necessary to uphold the Commission's decision, however, because it properly determined defendant itself had not acted in a negligent manner. We therefore decline to address the Commission's finding regarding the contributory negligence of plaintiff.

[6] Finally, plaintiff objects to the Commission's conclusions of law. We believe each of the following conclusions of law by the Commission support its ultimate decision that defendant was not liable in negligence to plaintiff: first, that defendant had in place a reasonable routine to inspect the boardwalk for unsafe conditions, and had made a reasonable inspection of the boardwalk on the day of plaintiff's accident; second, that defendant was not negligent in failing to warn plaintiff of the danger of protruding nails.

This Court has determined that visitors to state parks are invitees. *See Smith,* 112 N.C. App. at 744, 436 S.E.2d at 882. As such, the park herein was under a duty to "exercise ordinary care in maintaining the premises in a reasonably safe condition, and to warn invitees of hidden dangers or unsafe conditions." *Id.* Unquestionably, raised nails may potentially cause pedestrians to trip, and defendant had knowledge nails occasionally protruded from the boardwalk. However, defendant responded to the danger in a reasonable manner by inspecting the boardwalk for hazards, including raised nails, on a regular basis, and by hammering down protruding nails as they were discovered. As discussed above, in light of the tremendous volume of visitors to the park, the superintendent's lack of knowledge of any accidents involving raised nails during his eleven year tenure is evidence that defendant indeed maintained the boardwalk in a reasonably safe condition.

Regarding plaintiff's claim that defendant had a duty to warn of "hidden" dangers, *see Smith,* 112 N.C. App. at 745, 436 S.E.2d at 882, we do not believe raised nails on a boardwalk by the ocean are the type of "hidden" danger concerning which patrons must be warned. "Slight depressions, unevenness and irregularities in outdoor walkways, sidewalks and streets are so common that their presence is to be anticipated by prudent persons." *Evans v. Batten,* 262 N.C. 601, 602, 138 S.E.2d 213, 214 (1964); see *Stephen v. Swiatkowski,* 635 N.E.2d 997, 1003 (Ill. App. 1994) (nail protruding from board in home was open and obvious). Likewise, the tendency of nails to work their

way out of boardwalks and docks by the ocean is to be anticipated by pedestrians using those structures. While some individuals may trip on raised nails on beach boardwalks, the utility of a sign warning of the existence of such nails is highly questionable due to common knowledge of the same. Furthermore, although we have declined to address the Commission's conclusion that plaintiff was contributorily negligent in failing to see the nail, we note plaintiff admitted she was "familiar with piers and fishing/ocean environments, having fished most of her life."

In sum, there is evidence in the record to support the Commission's findings of fact and conclusions of law to the effect that defendant was neither negligent in its maintenance of the boardwalk nor in its failure to warn of the possibility of protruding nails therein.

Affirmed.

Judges EAGLES and WALKER concur.