LAUREN M. PELL, Plaintiff-Appellee, *v.* VICTOR J. ANDREW HIGH SCHOOL *et al.*, Defendants (AMF, Inc., Defendant-Appellant).

First District (5th Division)    No. 82—2539

Opinion filed April 6, 1984.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, James P. DeNardo, and Shaun McParland, of counsel), for appellant.

Michael J. McArdle, of Chicago, for appellee.

JUSTICE WILSON delivered the opinion of the court:

This is an appeal by defendant AMF, Inc. (AMF) from the entry of judgment in the circuit court of Cook County on a jury verdict for plaintiff Lauren M. Pell for permanent injuries plaintiff sustained during gym class while performing a somersault off a trampoline manufactured by AMF. Prior to trial, plaintiff and defendants School District 230 and Victor J. Andrew High School entered into a settlement agreement for $1.6 million. Thereafter, the jury awarded plaintiff $5 million against AMF on the theory of strict liability, which amount was set off by the $1.6 million settlement figure and .resulted in a fi-

nal judgment against AMF for $3.4 million. Ill. Rev. Stat. 1981, ch. 70, par. 302(c).

On appeal, AMF contends that the trial court erroneously failed to direct a verdict in its favor or to grant its motion for judgment notwithstanding the verdict because (1) AMF cannot be held liable for failure to provide warnings and instructional materials to either of the other defendants; (2) because the proximate cause of plaintiff's injury was the school district's wilful and wanton misconduct in failing to properly instruct and supervise plaintiff in the use of the trampoline; and (3) because plaintiff's knee condition was the proximate cause of her injury. AMF contends further that the trial court erred (4) in refusing to allow AMF to present evidence on the issue of plaintiff's comparative negligence; (5) in admitting exhibits that dealt with full-size trampolines; (6) in refusing to admit two of AMF's exhibits, and (7) in finding that plaintiff's settlement with the school district was made in good faith. For the reasons hereinafter set forth, we affirm.

On December 29, 1980, plaintiff, a 16-year-old sophomore and beginner gymnast at Victor J. Andrew High School, was injured as the result of a somersault she performed on a product manufactured by AMF, called a mini-trampoline or trampolette (mini-tramp). This equipment consists of a 37-inch, square-shaped metal frame holding a "bed" of polypropylene fabric with rubber cables which lace the "bed" to the frame. Two adjustable metal leg sections can be used to set the frame at any angle or to fold the equipment flat.

The mini-tramp was sold to School District 230 with a heat-laminated caution label affixed to the bed which stated:

"Caution. Misuse and abuse of this trampoline is dangerous and can cause serious injuries. Read instructions before using this trampoline. Inspect before using and replace any worn, defective, or missing parts. Any activity involving motion or height creates the possibility of accidental injuries. This unit is intended for use only by properly trained and qualified participants under supervised conditions. Use without proper supervision can be dangerous and should not be undertaken or permitted."

When the mini-tramp was assembled by a faculty member at the high school, the bed was placed so that the caution label was on the bottom, facing the floor, as opposed to the top where it would be visible to a performer. There were printed warnings also on the frame of the mini-tramp; however, they were covered by frame pads on each of the four sides.

On the day of the injury, plaintiff had first performed two somer-

saults off the mini-tramp. Both of the school's coaches, Charlene Nutter, the varsity gymnastics coach, and Cathi Miles, were present in the gymnasium. Miles, who worked primarily with the freshmen and sophomore students, witnessed plaintiff's third somersault from a distance of approximately 10 feet. Plaintiff testified that she took a few running steps up to the mini-tramp and jumped onto the bed. When she went into the air, at the point when her feet were straight up and down above her, plaintiff said she felt a sharp pain in her knee and was unable to properly complete her somersault. She collapsed onto a nearby mat, severing her spine.

Plaintiff then filed a cause of action against Victor J. Andrew High School, School District 230, Crown Mats, Inc., and AMF. As previously explained, a pretrial settlement between the high school and school district resulted in their dismissal and rendered moot portions of counts I and II of plaintiff's complaint; plaintiff also dismissed Crown Mats, Inc., because of insufficient evidence.

Counts III, IV, VII, and VIII of plaintiff's complaint alleged that AMF's mini-tramp was not reasonably safe for its intended use; that AMF failed to adequately warn or advise plaintiff that use without a harness, safety belt and supervision by a trained instructor would result in severe injury and that AMF carelessly and negligently failed to provide a support harness or restraining device to prevent improper landing. Plaintiff further alleged that as a direct and proximate result of the defect in the mini-tramp, plaintiff landed on her neck, severed her spine and was permanently paralyzed.

In reply, AMF filed affirmative defenses asserting that (1) plaintiff had assumed the risk of injury because she knew of the condition of the mini-tramp and the dangers involved in using it, and (2) that any verdict against AMF must be reduced by the percentage of plaintiff's contributory negligence.

Plaintiff then filed a motion *in limine* to preclude AMF from presenting evidence that her conduct contributed to cause her injury. Granting the motion, the court reasoned that although it would allow AMF to offer evidence of plaintiff's negligence, it would "wait and see what happens" before deciding whether to give a comparative negligence instruction to the jury.

The record shows that during the trial of this matter, plaintiff and AMF called many witnesses to testify, including high school coaches, the president of AMF and one of its vice-presidents, as well as gymnastic experts and physicians. Because of the lengthy proceedings, we will address AMF's argument at the outset and refer to the pertinent testimony only as we deem to be necessary.

At the close of all the evidence, the question of comparative negligence was again addressed during a post-trial discussion on jury instructions, where the court determined that "*** this case really turns on proximate cause. *** I am taking the view [that] this is not an appropriate case for application of the principles of comparative negligence." The court once again reiterated its reasons for not instructing the jury on comparative negligence, stating that there had been absolutely no evidence of assumption of the risk as well. The jury was thereafter given an instruction on strict liability. It returned a verdict against AMF and assessed plaintiff's damages at $5 million. Following the entry of judgment on this verdict, AMF appealed.

OPINION

Initially, AMF maintains that the trial court erred in failing to direct a verdict in its favor or to grant its motion for a judgment notwithstanding the verdict because it cannot be held liable, as a matter of law, for failing to provide warnings and instructional materials for using the mini-tramp since the school district as well as the high school had all of the appropriate instructional materials.[1] We find this reasoning unpersuasive, however, because it misstates the central issue presented to the trier of fact, which was the unreasonably dangerous condition of the mini-tramp which, plaintiff alleged, existed because AMF failed to *adequately* warn of the equipment's propensity to cause severe spinal cord injuries if used for somersaulting without a safety device operated by a trained instructor.

Warnings must be adequate to perform their intended function of risk reduction. Warnings may be inadequate, however, if they: (1) do not specify the risk presented by the product; (2) are inconsistent with how a product would be used; (3) if they do not provide the reason for the warnings; or (4) if they do not reach foreseeable users. *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 206, 454 N.E.2d 210; *Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 221, 412 N.E.2d 959; *Peterson v. B/W Controls, Inc.* (1977), 50 Ill. App. 3d 1026, 1029, 366 N.E.2d 144.

■ Considering these principles, in our opinion there was sufficient evidence in the instant case from which the jury could conclude that AMF's warnings were ineffective. First, the warnings did not

---

[1]We disagree with plaintiff's contention that AMF has waived several issues for our consideration because they were neither presented during trial nor in a post-trial motion. The record shows that these issues *were* presented by AMF in several of its written motions submitted during the pendency of this case. Plaintiff's contention therefore cannot be sustained.

specify the risk of severe spinal cord injury which would result in permanent paralysis during somersaulting off the mini-tramp if performed without a spotter or safety harness. Charlene Nutter, head coach at the high school, testified that she did not know that the mini-tramp had any more risk involved in it than did any other gymnastic equipment and had she known, she would have taken precautions.

Coach Cathi Miles was also unaware of any rule that somersaults should not be performed on a mini-tramp without a spotter or overhead mechanical safety belt, although she had used the safety harness with a larger (full-size) trampoline as well as the mini-tramp.

In addition, the jury could have reasonably determined that the warnings were inadequate because their location was inconsistent with the equipment's use. Plaintiff presented evidence that the assembly instructions failed to specify that the warning label should be placed in such a manner that it would be clearly visible to a gymnast. As a result, the warning label on the "bed" was placed underneath, facing the floor. The warnings on the sides of the metal frame were also ineffective because they were covered by frame pads.

In addition, because there was evidence that AMF had regularly participated in the United States Gymnastic Safety Association (USGSA), the jury could have easily concluded that AMF was familiar with the warnings that that association recommended which were that the labels should explain the reason for a warning and should be clearly visible to a mini-tramp user. AMF, however, failed to present evidence that anyone from the high school had attended a trampoline safety certification clinic. In fact, Mike Jacki, a vice-president at AMF, explained that AMF's certification program had been discontinued because of lack of funds. Thus, the jury in this case, which examined the mini-tramp from a distance of a few feet, was able to determine whether AMF's warnings were adequate. We are convinced that this determination was correct.

■ AMF next contends that the trial court erred in failing to issue a directed verdict or judgment notwithstanding the verdict because the proximate cause of plaintiff's injury was the school district's failure to provide plaintiff with proper gymnastic instructions in the safe use of the mini-tramp. We cannot agree.

In a strict liability action, a manufacturer may remain a contributing cause of an injury if the intervening acts or omissions of others were foreseeable. (*Niffenegger v. Lakeland Construction Co.* (1981), 95 Ill. App. 3d 420, 426, 420 N.E.2d 262.) Foreseeability means that which is objectively reasonable to expect, not what might conceivably occur. (*Williams v. RCA Corp.* (1978), 59 Ill. App. 3d 229, 231, 376

N.E.2d 37.) This is ordinarily a question of fact for the jury. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13, 310 N.E.2d 1.) Liability will also attach if the defendant's conduct contributed in whole or in part to the injury, so long as it was *one* of the proximate causes. *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 88, 199 N.E.2d 769.

In the case before us, there was sufficient evidence to support a finding that it was objectively foreseeable that mini-tramp users such as plaintiff would not always be under the direct supervision of a coach and that neither a gymnast nor a coach would have sufficient knowledge of the dangers of the mini-tramp because the warnings were inadequate. As we have previously explained, plaintiff submitted ample evidence which strongly suggested that AMF's warnings were inadequate. Additionally, the record shows that both Larry Fie and Mike Jacki testified that coaches were not "told to put the kids in harnesses if they're using a mini-tramp to avoid crippling injuries from doing a somersault." In our judgment, therefore, the trial court could not have directed a verdict for AMF since the evidence, when viewed in a light most favorable to the nonmovant, plaintiff, demonstrated that (1) the absence of direct supervision was reasonably foreseeable, and (2) that AMF's failure to adequately warn of the risk of serious injury was a proximate cause of plaintiff's injury. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Accordingly, the trial court's denial of AMF's motion will not be disturbed.

Next, as an alternative to the preceding argument, AMF maintains that plaintiff's "idiosyncratic" knee condition was the proximate cause of her injury and that because this condition was unforeseeable, AMF did not have a duty to warn or to protect plaintiff against the danger of performing on the mini-tramp with such a condition. AMF relies on our recent decision in *Presbrey v. Gillette Co.* (1982), 105 Ill. App. 3d 1082, 435 N.E.2d 513, where we reversed the trial court's decision in favor of the plaintiff after determining that plaintiff's evidence failed to show that the defendant's product (deodorant) contained an ingredient to which a substantial number of the population was allergic. We found instead that the proximate cause of the plaintiff's injury was due to the *plaintiff's* idiosyncratic reaction or allergy to the product and not to the company's failure to warn of a defect. 105 Ill. App. 3d 1082, 1094.

In the case at bar, however, plaintiff testified that her knee had never been such a problem for her that she could not practice gymnastics, although it had been "locking up" on her during her diving (swimming) practice in her freshman year. Unlike the plaintiff in *Pre-*

*sbrey*, therefore, whose unusual susceptibility was a successful defense to liability because the manufacturer did not know and had no reason to know that a small minority of the users of its product was allergic to an ingredient in the product, the jury in the instant matter could reasonably determine that plaintiff's injury was not caused by any unusual propensity on her part. Thus, even if AMF had known of plaintiff's "knee condition," it would not be absolved of the duty to adequately warn users of the high risk of injury associated with the mini-tramp.

■ AMF next contends that the trial court's refusal to give several of its jury instructions improperly precluded the jury from considering the percentage of contributory negligence attributed to plaintiff. It maintains that because plaintiff was aware of her knee condition and knew that a safety harness and spotters were available to assist her, the jury could have found that plaintiff's failure to request her coach's permission to somersault without a spotter or harness was a proximate cause of her injury. The court's failure to give a comparative negligence instruction precluded the jury from making this determination, AMF asserts. This contention cannot prevail.

In *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, our supreme court upheld the principle that contributory negligence is *not* a defense in a strict product liability tort action. Comparative fault *is* applicable to strict liability cases, the court determined, but only insofar as the defenses of misuse and assumption of the risk are concerned. Moreover, these defenses no longer preclude recovery in such actions. Thus, once a defendant's liability is established, and where both the defective product *and* the plaintiff's misconduct contribute to cause the damages, the comparative fault principle will operate to reduce the plaintiff's recovery by that amount which the trier of fact finds him at fault. 97 Ill. 2d 104, 119.

In the case at bar, AMF failed to establish that plaintiff's alleged negligence rose to the level of misuse of the mini-tramp or that she assumed the risk of injury. Rather, we are of the opinion that the evidence showed that because the warnings as well as any other information AMF provided about the mini-tramp were ineffective and failed to warn that use of the equipment without a safety device and proper supervision could result in permanent injury, plaintiff was unaware that somersaulting off of this product could result in serious injury. Furthermore, because there was no evidence that plaintiff had used the mini-tramp for a purpose that was neither intended nor reasonably foreseeable, AMF's allegation of misuse of the product will be rejected. *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418,

425, 261 N.E.2d 305.

■■ We further note that the *Coney* decision mentioned above was recently applied by this court in a strict liability action where the defendant alleged, like AMF in the case at bar, that the comparative fault principle should apply to all aspects of plaintiff's culpability, including the plaintiff's alleged contributory negligence. (See *Simpson v. General Motors Corp.* (1983), 118 Ill. App. 3d 479, 455 N.E.2d 137.) Again, as we decided in *Simpson*, we reject this contention since permitting the ordinary contributory negligence of a plaintiff to reduce damages in strict liability actions would frustrate the policy considerations underlying this tort theory. In such actions, the focus is on the design and performance of the product and the plaintiff is relieved of the burden of proving negligence. (118 Ill. App. 3d 479, 482-83.) Moreover, a consumer's unobservant or inattentive failure to discover or guard against a defect is not a damage reducing factor. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119, 454 N.E.2d 197.) The trial court's ruling, which denied AMF's request for a contributory negligence instruction, will therefore prevail.

■■ Next, it is urged that the trial court erroneously admitted evidence pertaining to full-size trampolines. A mini-tramp differs from a full-size trampoline in size, purpose and function, AMF contends, even though the definition of both pieces of equipment is the same. (A "bed," secured on a metal frame, suspended by springs with pads that cover the springs and frame.)[2] We cannot agree.

First, the record shows that the trial court denied AMF's motion *in limine* to preclude any evidence pertaining to full-size trampolines because it "[did not] have enough information *** to determine whether there was a substantial difference between a full size and mini-trampoline." The court further ruled that AMF should object during trial and that the court would rule accordingly.

The testimony reveals that the court's ruling, based on its uncertainty as to the definitional difference between the two types of equipment was correct because of the conflicting evidence presented during trial on this point. One of AMF's vice-presidents, Larry Fie, first testified as an adverse witness under direct examination by plaintiff that because of certain qualifying language, the 1977 defini-

---

[2]During argument on AMF's motion *in limine* to preclude evidence pertaining to full-size trampolines, AMF emphasized that a full-size trampoline is used for repetitive bouncing and that the risk of injury relates to coming off the trampoline onto the floor or coming down onto the trampoline itself. A mini-tramp is a single rebound device and is used as a vaulting board. The performer bounces once and is propelled onto a mat.

tion by the American Society for Testing and Materials (ASTM) of a trampoline did not apply to a mini-tramp. That definition, which Fie read into evidence, states as follows:

> *"trampoline—*a propelling device activated by jumping, upon which gymnastics are performed; alternatively, a propelling device that is used to increase the height of a jumping activity. It is a total system made up of the following integral parts: *** frame *** bed *** suspension system *** frame pads ***."

Under further testimony, however, Fie agreed that the ASTM standards *did* apply "to this [mini] trampoline but excludes certain things from it." Thus, Fie testified that the ASTM standards, at least in part, *did* apply to the mini-tramp. He also testified that the lighting recommendations in the ASTM standards applied to all trampolines, including the mini-tramp. AMF's objection on the grounds of relevancy was overruled. Fie further testified that the mini-tramp which was exhibited before the jury was listed in AMF's catalogue under the heading "Trampoline." He stated, "I'm not saying people don't call it a trampoline, but a trampoline is a continuous bounce device." Plaintiff then presented testimony by gymnastic expert Jeff Austin, who said that the ASTM definition *did* apply to mini-trampolines.

Because there was conflicting evidence throughout the trial of this case as to whether the definition of a full-size trampoline also applied to a mini-tramp, it was well within the court's discretion to admit relevant evidence concerning both kinds of equipment as such evidence clearly showed that neither the ASTM nor AMF in its equipment catalogue specifically defined a mini-tramp. *Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 556, 356 N.E.2d 779.

As far as the other exhibits pertaining to full-size trampolines which the trial court admitted, which included instructions for proper display of trampoline cautionary statements and trampoline care and maintenance, for the foregoing reasons we do not believe that the court's decision was in error. Moreover, if in any instance AMF was harmed, it was not prejudiced thereby and neither was the outcome of the case unduly affected. *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 372, 366 N.E.2d 327.

■ Further challenging the trial court's evidentiary rulings, AMF asserts that the court erroneously refused to admit company records showing the contents of a mass mailing in 1977 to all of the school districts in the United States. This mailing contained the ASTM rules for trampolining, warning labels, safety rules, safety charts and a letter to the school district administrators advising them to evaluate

their programs and to make sure their equipment was properly used. We cannot agree with AMF's contention.

First, AMF's exhibit No. 3, a letter from another manufacturer of athletic equipment (Nissen) which was addressed to Larry Fie, was properly determined by the trial court to be inadmissible as a business record of AMF. The court stated that such evidence was one of *Nissen's* business records but that as to AMF, the letter was a hearsay document. See *Benford v. Chicago Transit Authority* (1973), 9 Ill. App. 3d 875, 877-78, 293 N.E.2d 496, where the court determined that just because a document is retained in the files of a business does not qualify it as a business record if it was not generated by the business.

Additionally, the court questioned the relevancy of the letter since it merely stated that 15,170 mailings were made to school superintendents but did not indicate whether the mailing had included plaintiff's high school.

■ AMF's exhibit No. 4 was the actual mailing package referred to in the letter to Fie. Stating that there was no evidence that the particular gymnastic rules poster in the package was posted at plaintiff's high school, the court determined that the poster was inadmissible but that AMF would be allowed to introduce evidence as to whether the poster had been delivered to the school. The record then shows that AMF responded that it could prove that the poster had in fact been delivered. When the trial resumed, Mike Jacki testified accordingly. The poster was then admitted without objection. In our opinion, the trial court's well-reasoned decision on this issue was correct.

■ AMF's final contention is that plaintiff's pretrial settlement with the school district for $1.6 million does not bar AMF from filing a separate contribution action against the district because the settlement amount fails to reflect the district's *pro rata* share of liability and because the settlement agreement was not made in good faith. We cannot agree.

The record shows that during a pretrial discussion on this issue, after the court determined that the settlement was made in good faith, it informed AMF that it would issue a ruling, when presented, on AMF's third-party action against the school district. Whether AMF filed such an action, the court ruled, either "now or in the future *** [was] up to [AMF]."

The problem before us, however, is that AMF neglected to file such an action while this matter was being litigated before the trier of fact. Having failed to do so, AMF is now barred from seeking contri-

bution against the school district. The question of contribution among tortfeasors was specifically addressed in our recent decision, *Tisoncik v. Szczepankiewicz* (1983), 113 Ill. App. 3d 240, 246, 446 N.E.2d 1271, and applies with equal force to the case at bar.

In *Tisoncik*, we interpreted the enforcement provision of the Illinois Contribution Act to mean that a contribution claim may be asserted by a separate action before or after payment by a codefendant to the injured party where no suit is pending which was initiated by the injured party. When there *is* a pending action, however, the contribution claim should be asserted by counterclaim or by a third-party claim *in that action.* (113 Ill. App. 3d 240, 255.) As specifically stated in the Act, "A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint *in a pending action."* (Emphasis added.) Ill. Rev. Stat. 1981, ch. 70, par. 305.

Applying this reasoning to the facts of the instant case, we find that because AMF did not assert a counterclaim for contribution in the pending action below, it now does not have standing to appeal the dismissal of the other joint tortfeasors.

■ We further believe that AMF's contention that the settlement was not made in good faith is without merit. The record reveals that there was a lengthy discussion on this issue, which AMF presented before the court for a second time in a post-trial motion. We have reviewed these proceedings and, in our judgment, the court properly determined after hearing argument by counsel for plaintiff, the school district and AMF that "**** simply because [plaintiff] made a good settlement without somebody else and then seeks more money from [AMF] because [plaintiff] is in a better bargaining position doesn't make it a bad faith settlement. *** I'm going to make a finding that there is no evidence of bad faith that would justify a fact hearing." We are convinced that this decision was correct. Moreover, our research has failed to uncover any authority in Illinois requiring a separate evidentiary hearing to specifically address the question of whether a settlement agreement was made in good faith. We therefore conclude that the court did not act arbitrarily in determining that the settlement was equitable.

Accordingly, for all of the foregoing reasons, the judgment of the circuit court of Cook County will be affirmed.

Affirmed.

MEJDA, P.J., and LORENZ, J., concur.