CHRISTA FORD, a Minor, by and through her Father and Next Friend, Dennis Ford, *et al.*, Plaintiffs-Appellants, v. JERRY NAIRN *et al.*, Defendants-Appellees.—CHRISTA FORD, a Minor, by and through her Father and Next Friend, Dennis Ford, *et al.*, Plaintiffs-Appellees, v. JERRY NAIRN *et al.*, Defendants-Appellants (Jumpking, Inc., Defendant).

Fourth District   Nos. 4—98—0675, 4—98—0717 cons.

Argued June 23, 1999.—Opinion filed September 7, 1999.

Lee W. Barron (argued), of Alton, for Christa Ford and Dennis Ford.

Michael T. Reagan (argued) and Jill W. Klein, both of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of Ottawa, for Jerry Nairn and Betty Nairn.

Stephen J. Maassen (argued), of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for Jumpking, Inc.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiffs, Christa Ford, a minor, by and through her father and next friend, Dennis Ford, and Dennis Ford, individually, brought this action to recover money damages for injuries to Christa's knee received while she was jumping on a trampoline. They allege defendants Jerry and Betty Nairn, the trampoline owners, had a duty to keep the trampoline in a reasonably safe condition for use by Christa and others using the trampoline with the consent of the Nairns and to warn them of any hazards reasonably expected to exist by using the trampoline. They also allege both negligence and products liability against defendant Jumpking, Inc., the trampoline manufacturer, claiming it was Jumpking's duty to warn consumers of any hazards reasonably expected to exist by the use of the trampoline, including the hazard of two or more people simultaneously jumping, called "double jumping," and that Jumpking negligently failed to provide adequate warnings. The trial court granted summary judgment for each defendant. Plaintiffs appeal from both orders of summary judgment, docketed No. 4—98—0675. The Nairns also appeal, seeking dismissal of Jumpking's third-party complaint against them, docketed No. 4—98—0717. We affirm the summary judgment orders in No. 4—98—0675 and dismiss the appeal in No. 4—98—0717 as moot.

The Fords filed their complaint on November 7, 1994. The parties engaged in discovery and numerous discovery depositions were taken. Jumpking filed a motion for summary judgment with an accompanying memorandum and exhibits on April 17, 1997. On May 7, Jerry and Betty Nairn also filed a motion for summary judgment with an ac-

companying memorandum and exhibits. No memorandum or exhibits were filed by the plaintiffs in opposition to either motion for summary judgment.

On September 3, 1997, the Nairns' motion for summary judgment was argued, and the trial court granted it by docket entry on September 29, finding no genuine issue of material fact. The trial court entered a clarification and amplification of its decision on November 7, finding the Nairns owed no duty to Christa to warn of dangers inherent in the use of a trampoline under the circumstances. Christa was a teenager, and the dangers of the trampoline were open and obvious. In addition, the trial court found the Nairns are protected from liability for the use of their personal property located on their land pursuant to the Recreational Use of Land and Water Areas Act (Recreational Use Act) (745 ILCS 65/1 *et seq.* (West 1992)).

Further discovery ensued and Jumpking's motion for summary judgment was finally argued on May 28, 1998. The trial court issued its order on July 23. The court found the warnings provided by Jumpking were reasonable under the circumstances, the trampoline had been delivered in a safe condition, and plaintiffs failed to establish a causal link between the alleged inadequate warnings and the injury. Plaintiffs filed a timely notice of appeal from both summary judgment orders.

The evidence in this case consists primarily of the deposition testimony of the parties. Christa testified in her deposition that on November 8, 1992, she jumped on a trampoline at the home of defendants, Jerry and Betty Nairn. She was 14 years old at that time. Christa was spending time with her friend, Angie Gulledge, on the date of the incident. Angie asked Christa if she wanted to go jump on the trampoline at the Nairn residence, across the street from where Angie was living. Angie and Christa went to the Nairns' home and talked to the youngest daughter, Allison, who asked someone else in the home whether the girls could jump on the trampoline and that "someone" said "yes." When Christa called home to ask her mother if it would be all right to jump on the trampoline, Angie told her to tell her mother Jerry Nairn was home and he was the person the girls asked for permission. Christa had never been to the Nairn residence before but she had jumped on trampolines previously at least four or five times.

Christa described the Nairns' trampoline as big and round with pads all the way around. At first Christa and Angie jumped separately on the trampoline for about 10 minutes before Christa Nairn and Toni Frank came to use the trampoline also. Christa Nairn and Toni began to do stunts on the trampoline while both were jumping at the same

time, and Christa asked if she could join them. Christa testified two people jumped toward each other on the trampoline and then jumped away. They sometimes did a flip or "just little things." They jumped two, three, or four at a time.

Christa continued to jump for an additional 15 or 20 minutes. Toni asked Christa if she wanted to jump higher and Christa said, "Sure." Toni indicated they did it "all the time and it's a lot of fun." Toni jumped toward Christa to make her go higher and was back in the air when Christa felt a pain in her knee as she landed on the trampoline mat.

Christa stated she hurt her knee when the trampoline mat was coming up and she was coming down. Christa said when she landed "there was no give in the trampoline to stabilize, and it [the knee] just clicked on me and went out, and there was a sharp pain."

Christa admitted giving a statement prior to her deposition in which she said she "did come down on it wrong." She also said, "I came down on my foot. It was like the inside of my foot had made my knee give out on me." She further indicated in her statement she was "jumping high."

Christa observed nothing wrong with the trampoline while she was on it. The pads were in place and it appeared to be in good condition. The only warnings or labels Christa recalled on the trampoline were a white tag on the rail and a little square tag on the mat. Christa stated that, in her opinion, instructions and warnings normally stand out but she did not see any. However, she also admitted she could not say whether any other labels were there as she was not looking for instructions or warnings and simply did not look.

Jerry Nairn testified he and his wife purchased their trampoline in 1992. He confirmed he received a user's manual provided by the manufacturer, Jumpking, with the trampoline. He also confirmed receipt of a placard containing trampoline instructions and warning decals. Jerry testified he secured the warning placard to the wall of the Nairn home next to the trampoline. He did not attach the placard to the trampoline itself because he could not find anywhere to attach it. Jerry stated he could have attached it to the trampoline with a twisty tie but did not think it would remain there long. He placed one of the warning decals on the placard and the other on a metal portion of the trampoline where the user climbs on and off. Jerry also stated a warning was sewn on the mat itself, although he did not remember what it said.

Jerry stated he normally could see kids using the trampoline from inside the house and in his garage where he worked. He has no knowledge of the accident involving Christa and has no recollection of Angie

requesting permission for herself and Christa to use the trampoline. Jerry instructed his children that no double jumping was allowed and noted they read the rules accompanying the trampoline.

Betty Nairn confirmed receipt of the user's manual, the placard, and the decals at the time of the purchase of the trampoline. She also stated the placard and decal were posted on the house beside the trampoline. Betty stated she and Jerry would not permit double jumping. She stated the warnings indicated double jumping was dangerous, and her children were familiar with that rule. Betty stated another warning was on the mat itself, including the warning against double jumping.

The user's manual supplied with the trampoline specifically stated no more than one person should be allowed on the trampoline at a time, and the owner has the responsibility to see that all users are adequately informed of all warnings and safety instructions. The manual also stated the trampoline is intended to be used by one person—weighing less than 275 lbs.—at a time. The manual further stated the owner had the responsibility to post the safety instructions placard on the trampoline and to make sure all users were properly informed of the rules along with all warnings and safety instructions. The manual set forth the rules, which were repeated on the placard. The placard specifically stated:

> "4. Permit only one performer at a time on the trampoline. Two (2) or more performers create additional risks of injury due to collisions, being bounced off the trampoline[,] and unexpected responses by the trampoline mat."

The warnings supplied by Jumpking complied with the applicable industry safety standard, ASTM Standard F381-84.

■ The standard of review for the granting of a summary judgment motion is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736, 740 (1993). All issues of fact, pleadings, depositions, and admissions must be construed strictly against the movant and liberally in favor of the party opposing the motion. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215 (1992).

■ The question of whether a duty to warn exists is a question of law (*Martin v. Ortho Pharmaceutical Corp.*, 169 Ill. 2d 234, 239, 661 N.E.2d 352, 354 (1996)) and no such duty exists where the danger involved is apparent or open and obvious. *Klen v. Asahi Pool, Inc.*, 268 Ill. App. 3d 1031, 1035-36, 643 N.E.2d 1360, 1363-64 (1994); *Cozzi v. North Palos Elementary School District No. 117*, 232 Ill. App. 3d 379, 382, 597 N.E.2d 683, 685 (1992). The duty to warn is determined by an objective analysis and should focus on the awareness of an ordinary

person, the typical user's perception and knowledge. *Klen*, 268 Ill. App. 3d at 1035, 643 N.E.2d at 1363.

Plaintiffs contend the issue of whether a trampoline presents an open and obvious risk was decided in the negative by this court in *Johnson v. Decatur Park District*, 301 Ill. App. 3d 798, 704 N.E.2d 416 (1998). *Johnson* dealt with a minitrampoline used during a "power tumbling" routine. A minitrampoline is "a rebound device set on an incline or slant designed to provide a gymnast with greater height in performing somersaults and other gymnastic feats." *AMF, Inc. v. Victor J. Andrew High School*, 172 Ill. App. 3d 337, 338, 526 N.E.2d 584, 585 (1988). The plaintiff was using the minitrampoline to propel himself into a front flip. *Johnson*, 301 Ill. App. 3d at 800, 704 N.E.2d at 418. The defendant park district argued the risk involved in the use of the minitrampoline was analogous to the risk of falling from a height and was open and obvious. *Johnson*, 301 Ill. App. 3d at 805, 704 N.E.2d at 421. This court found the use of the minitrampoline involved *special* risks that could not be compared with the risks of falling from a height or recreational activities such as diving. The use of the minitrampoline required a higher skill level than that involved in the use of recreational equipment or in diving and, therefore, had greater risks. *Johnson*, 301 Ill. App. 3d at 806, 704 N.E.2d at 421-22.

*Johnson* would control if the present case involved a minitrampoline. We find it distinguishable when a round recreational trampoline is involved. Distinct differences exist between the two pieces of equipment and their uses. A minitrampoline is used to propel a person off the trampoline and into a gymnastics or tumbling maneuver. It would normally be used by those engaged in tumbling or gymnastics with a higher skill level than the average recreational jumper. A round trampoline, such as the one used by Christa Ford, is intended for recreational use and is used by backyard jumpers, not to propel themselves off of it and into other maneuvers, but for jumping up and down and remaining on it. The skill level required is not unusually high and the dangers of using it would be more analogous to the dangers involved in falling from a height.

Our research has revealed a dearth of Illinois cases dealing with an assessment of the open and obvious danger of a recreational trampoline. In the one case found, *Fallon v. Indian Trail School*, 148 Ill. App. 3d 931, 500 N.E.2d 101 (1986), the allegation was the trampoline was an abnormally dangerous instrumentality. In *Fallon*, the court found no Illinois case law discussed whether the trampoline was an abnormally dangerous instrumentality or whether its ordinary use in jumping on it in a physical education class was an ultrahazardous activity. *Fallon*, 148 Ill. App. 3d at 934, 500 N.E.2d at 103. The

court went on to find the trampoline itself was not abnormally dangerous nor was its ordinary use ultrahazardous. *Fallon*, 148 Ill. App. 3d at 934-35, 500 N.E.2d at 103.

While trampoline jumping may not be abnormally dangerous or ultrahazardous, it is certainly not risk-free. The dangers it presents, however, such as falling from a height, falling while attempting to land a "trick," or even falling off, are open and obvious to teenagers and adults. Risks associated with double jumping, such as collisions or increased impact from someone else in addition to oneself applying pressure to the trampoline mat, are also open and obvious. The increased impact and the ability to jump even higher is exactly what attracts jumpers to engage in double jumping and is what attracted Christa Ford in this case.

We are not alone in our assessment that the dangers of trampoline usage are open and obvious. Several of our sister states have addressed this issue and come to the same conclusion. *Liccione v. Gearing*, 252 A.D.2d 956, 957, 675 N.Y.S.2d 728, 729 (1998); *Anderson v. Weslo, Inc.*, 79 Wash. App. 829, 835, 906 P.2d 336, 339 (1995); *Barnes v. Fulton*, 213 Ga. App. 806, 807, 446 S.E.2d 213, 214 (1994); *Burchinal v. Gregory*, 41 Colo. App. 490, 492, 586 P.2d 1012, 1013 (1978). *Liccione* also involved double jumping, and all plaintiffs in the cited cases were teenagers except the plaintiff in *Barnes*. There, the plaintiff was only in fourth grade, but the court found even children of that age were able to appreciate the open and obvious danger of trampoline usage.

Cases from other jurisdictions failing to grant summary judgment on the issue of open and obvious danger of trampoline usage all included evidence raising an issue of material fact as to whether the specific plaintiff appreciated the open and obvious danger of trampoline usage. See *Liesener v. Weslo, Inc.*, 775 F. Supp. 857 (D. Md. 1991); *Bryant v. Adams* 116 N.C. App. 448, 448 S.E.2d 832 (1994); *Albritton v. Kiddie, Inc.*, 69 Ohio App. 3d 708, 591 N.E.2d 781 (1990).

■ As noted, in Illinois the duty to warn is determined by an objective analysis, which focuses, not on the individual plaintiff, but on the awareness of an ordinary person using the product (*Klen*, 268 Ill. App. 3d at 1035, 643 N.E.2d at 1363)—in this case, a reasonable 14 year old. We find a reasonable 14 year old would appreciate the open and obvious danger of jumping on a trampoline, and we find no duty to warn on the part of either the Nairns or Jumpking.

■ Further, we find the warnings actually issued by Jumpking were adequate. Evidence of standards promulgated by an industry, trade group, or regulatory agency may be relevant in a product liability action to determine whether a condition is unreasonably dangerous. *Ruffiner v. Material Service Corp.*, 116 Ill. 2d 53, 58, 506

N.E.2d 581, 584 (1987). In this case, the evidence showed the applicable industry standard, ASTM Standard F381-84, applied to round trampolines commonly used in backyards and, further, that Jumpking's warnings complied with this standard.

Because we find the dangers of using a trampoline to be open and obvious, thus obviating any duty to warn a teenage user of the trampoline, we make no determination whether the Nairns are protected from liability under the Recreational Use Act. 745 ILCS 65/1 *et seq.* (West 1992). For similar reasons, we make no determination whether plaintiffs established a causal link between Christa's injuries and the alleged inadequacy of the warning given because the Nairns had no duty to warn Christa, and the warnings given were adequate. Finally, we need not reach the issue posited in No. 4—98—0717, so we dismiss that appeal as moot.

The orders of summary judgment entered in favor of defendants, Jerry and Betty Nairn and Jumpking, are affirmed.

No. 4—98—0675, Affirmed.
No. 4—98—0717, Appeal dismissed.

McCULLOUGH and GARMAN, JJ., concur.