(text box: 1) NO. 5-99-0789

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

KATHLEEN M. SOLLAMI, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Williamson County.

)

and )  No. 98-L-32

)

PHILLIP SOLLAMI, )

)

     Plaintiff and Counterdefendant-Appellant, )

)

)

)

LAWRENCE EATON,       )

)

     Defendant and Counterplaintiff-Appellee, )

)

and                 )

)

ICON HEALTH AND FITNESS, INC., a )

corporation, d/b/a JUMPKING, INC., a )

corporation, )  Honorable

)  Phillip G. Palmer,

     Defendant-Appellee. )  Judge, presiding.

________________________________________________________________________

JUSTICE MAAG delivered the opinion of the court:

Kathleen Sollami was injured while jumping on a trampoline that was manufactured by ICON Health and Fitness, Inc., a corporation, doing business as Jumpking, Inc., a corporation (Jumpking), and was purchased by and located on property owned by Lawrence Eaton (collectively, defendants).  Kathleen Sollami and her father, Phillip Sollami (collectively, plaintiffs) filed a complaint in the circuit court of Williamson County against Jumpking under a theory of strict product liability and against Lawrence Eaton under a theory of premises liability.  The circuit court granted a summary judgment in favor of both defendants, and plaintiffs appealed.  The issue is whether the circuit court erred in concluding that the dangers associated with jumping on the Jumpking "Backyard Round" trampoline are open and obvious, thereby obviating defendants' respective duties to warn.

On May 10, 1997, Kathleen Sollami went to the Eaton residence to visit her friend, Jackie Eaton.  Another mutual friend, Molly, was at Jackie's house when Kathleen arrived.  Two other friends arrived later.  The Eatons owned a Jumpking trampoline that was located in the side yard.  During the visit, Kathleen, Jackie, and three other friends decided to jump on the trampoline.  Jackie Eaton's parents were not home at the time.  They did not know that their daughter had invited friends to visit and were not aware that the group was going to be playing on the trampoline.

Kathleen jumped on the trampoline with her friends for awhile, became bored, got off and looked through a yearbook, and then climbed back on.  Sometime later that afternoon, the group decided to do "rocket" jumps.  The effect of a rocket jump is to propel one jumper, the "rocket", higher than the other jumpers.  To begin, all participants stand on the outside perimeter of the trampoline mat.  On the count of three, all jump up simultaneously.  All but one of the participants are supposed to jump up and land in place.  The "rocket" jumps toward the center of the trampoline.  When the "rocket" lands in the center of the trampoline mat, he or she is propelled higher than the other participants.

Kathleen watched as her friend Molly, the first "rocket", was propelled upward without incident.  Kathleen, who was 15 years old at the time, had never seen or participated in a rocket jump.  She had jumped on a trampoline on limited occasions in the past, but she had not received instruction or training in the use of a trampoline or in proper jumping and landing techniques.

Kathleen was the second "rocket".  On the count of three, all participants jumped up.  Kathleen jumped toward the middle of the trampoline.  Just as her feet came into contact with the trampoline bed, she felt her right knee pop.  Kathleen asked Jackie to call for help.  Jackie contacted Kathleen's parents, and they came to the house.  Kathleen was then transported to the emergency room by ambulance.  She suffered a serious injury to her knee, which required surgery and rehabilitation.

The Eaton family had purchased the trampoline a few years prior to the accident.  The trampoline, a "Backyard Round 14' diameter trampoline", was manufactured by defendant Jumpking.  The trampoline did not come assembled.  Included within the package containing the trampoline parts were a user's manual, which contains instructions on assembly, use, safety, and care and maintenance, and model instructional materials, warnings decals, and an instruction placard.  In its user's manual, Jumpking states that the use of its trampoline should always be under the direct supervision of a qualified instructor.  Jumpking also states that a lack of basic skills and knowledge is the greatest single cause of injury.  Jumpking recommends that United States Gymnastics Federation certified instructors provide supervision and training to all users of its product.  According to the user's manual, Jumpking recognizes that its trampolines are commonly used informally in a home or a backyard setting.  Illustrative passages from the user's manual are set forth as follows:

Page two of the user's manual is entitled "WARNING".  The last paragraph on that page states as follows:

"USE OF ANY TRAMPOLINE EXPOSES THE USER TO THE RISK OF SERIOUS INJURY, INCLUDING PERMANENT PARALYSIS OR EVEN DEATH FROM LANDING ON THE BACK, NECK[,] OR HEAD.  USE OF A TRAMPOLINE SHOULD ALWAYS BE UNDER THE DIRECT SUPERVISION OF A QUALIFIED INSTRUCTOR.  ALWAYS FOLLOW THE INSTRUCTIONS AND WARNINGS PROVIDED WITH YOUR TRAMPOLINE."

There is also a section of the user's manual entitled "TRAMPOLINE SAFETY".  This section contains a subsection entitled "USER'S ROLE IN PREVENTING ACCIDENTS".  That subsection states as follows:

"Education on the part of the user is a must for safety.  The user must understand that he/she has to first learn a low, controlled bounce.  Then he/she learns the basic landing positions and combinations before proceeding to intermediate skills.  He/she must understand why he/she has to master control before he/she can start thinking about other moves.  Understanding the proper progression of skills in rebound tumbling on a trampoline must be the first lesson.  Lack of basic skills and knowledge is the greatest single cause of injury."

The trampoline safety section also contains a subsection entitled "OWNER'S ROLE IN PREVENTING ACCIDENTS".  A portion of that subsection states:

"It is not uncommon for trampolines to be informally used in a home or a backyard setting.  If so, it is the responsibility of the owner or other person responsible for the trampoline to ensure that young or inexperienced persons use the trampoline only under mature supervision ***."

The third subsection is entitled "INSTRUCTOR'S ROLE IN PREVENTING ACCIDENTS".  A portion of that subsection states:

"The instructor must teach the fundamentals, supervise the use, and enforce the rules.  Strict supervision and enforcement of the rules will help minimize the likelihood of accidents and injuries.  The instructor must be in direct charge of the program."

The fourth subsection is entitled "Rules".  The second rule states that the trampoline should only be used with mature, knowledgable supervision.  This rule is also listed as the second rule on the instruction placard that is supposed to be attached to the trampoline.

Within the manual there are also sections titled "Instruction Program" and "Model Lessons".  These sections appear to be directed to the instructors.  These sections "strongly recommended that the first few periods of instruction embrace nothing beyond the discussion and demonstration of fundamental body mechanics and practice in the execution of the eight fundamental bounces–singly and in combination."  They also discuss the importance of perfecting a technique called "spotting" and a technique called "checking the bounce", which teaches the student how to land and "to absorb the upward thrust of the mat".  The instructions indicate that control rather than height should be emphasized with beginners and that students should be forbidden to practice alone and unsupervised.

Two warning decals are provided with the package materials.  The assembler is directed to attach one decal to the mat.  It states in pertinent part as follows: "This unit is intended for use only by properly trained and qualified participants under supervised conditions."  The other decal is to be attached to the frame.  It states in pertinent part: "Do Not use this trampoline without the direct supervision of a qualified instructor.  We recommend United States Gymnastics Federation certified instructors."

Mr. Eaton assembled the trampoline shortly after it was purchased.  He placed the warning stickers on the mat and frame as directed.  He also attached an instruction placard to the trampoline with a wire tie.  Mr. Eaton then placed the trampoline in the side yard on the east side of the house.  Mr. Eaton stated that during the spring prior to this incident, he found the instruction placard on the ground in his yard.  He did not reattach it.

Plaintiffs sued Jumpking under a theory of strict liability.  Plaintiffs alleged that the trampoline was not reasonably safe for its intended use due to one or more design defects.  Specifically, plaintiffs claimed that the trampoline was unreasonably dangerous because it was designed as a training device only to be used under the direct supervision of certified instructors but was sold as a backyard toy and because it failed to warn foreseeable purchasers and users that the trampoline should only be used under the direct supervision of a qualified instructor.  Plaintiffs also claimed that the product failed to warn users that only one person was permitted to use the trampoline at a time and that there was not an adequate means to permanently affix the instruction placard to the trampoline.

Plaintiffs sued Lawrence Eaton under a premises liability theory.  Plaintiffs alleged that Mr. Eaton failed to warn Kathleen about the danger of more than one person jumping on the trampoline, permitted more than one person to use the trampoline, and failed to supervise the activity of the minor children to ensure that only one person was jumping on the trampoline at any given time.

Both defendants filed motions for summary judgment.  Each defendant argued that a reasonable 15-year-old person would appreciate the open and obvious danger of jumping on a trampoline, that Kathleen was capable of recognizing any dangers associated with the use of a trampoline, and that there was no duty to warn of a known danger.  The circuit court found that the danger of jumping on a trampoline was open and obvious and that, as a matter of law, neither defendant had a duty to warn of an open and obvious danger.  Before addressing the issue on appeal, we will take up Jumpking's motion to strike a portion of plaintiffs' brief.  Jumpking moved to strike references to an article from a medical journal, 
Pediatrics
 magazine, because the article is hearsay and does not fall within any of the recognized exceptions to the hearsay rule.  Although Jumpking has indicated that the article was provided in discovery responses, it does not appear to be part of the record on appeal.  According to plaintiffs' description, the study appears to be in the nature of a Brandeis brief, providing a survey of trampoline-related injuries, including trends, types of injuries, and medical costs.  Although the parts of the study that plaintiffs reference indicate that children do get hurt while playing on trampolines, they do not discuss or offer an opinion on whether or not jumping on a trampoline is an open and obvious danger.  Because there is no indication that this study was presented to or examined by the trial court and because the information referenced from that study does not appear to be relevant to the issue on appeal, we have not considered it in deciding this appeal.  See 134 Ill. 2d R. 329.

Our review of summary judgment is 
de novo
.  
Espinoza v. Elgin Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113, 649 N.E.2d 1323, 1326 (1995).  Summary judgment should only be granted when the pleadings, depositions, and admissions on file, together with any affidavits, when viewed in a light most favorable to the nonmoving party, show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1992); 
Purtill v. Hess
, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986).

In a strict liability case, a plaintiff must prove that a product was in an unreasonably dangerous condition, that the condition existed at the time it left the manufacturer's control, and that the condition was a proximate cause of the plaintiff's injury.  
Suvada v. White Motor Co.
, 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188 (1965).  The failure to warn of a product's dangerous propensities may serve as the basis for holding a manufacturer or seller strictly liable in tort.  
Woodill v. Parke Davis & Co.
, 79 Ill. 2d 26, 33, 402 N.E.2d 194, 198 (1980). 

The purpose of a warning is to apprise a person of a danger of which he had no knowledge, in order to enable him to take appropriate measures to protect himself.  
McColgan v. Environmental Control Systems, Inc.
, 212 Ill. App. 3d 696, 701, 571 N.E.2d 815, 818  (1991).  Instructions and warnings must be adequate to perform the intended function of risk reduction.  
Pell v. Victor J. Andrew High School
, 123 Ill. App. 3d 423, 428, 462 N.E.2d 858, 862 (1984); 
Wallinger v. Martin Stamping & Stove Co.
, 93 Ill. App. 2d 437, 442, 236 N.E.2d 755, 759 (1968).  

Warnings serve to reduce the risk of harm by informing us of dangers of which we are unaware and to remind us of hazards of which we are already aware but may, due to distraction, momentarily forget.  
Harnischfeger Corp. v. Gleason Crane Rentals, Inc.
, 223 Ill. App. 3d 444, 459, 585 N.E.2d 166, 175 (1991).  Warnings may also convey a message that the risk of injury posed by a hazardous condition can be eliminated or reduced by employing a safer method of encountering the hazard.  Therefore, warnings should provide sufficient information regarding the dangerous condition of a product, the consequences of encountering that condition, and if applicable, a safer way to encounter the condition.  Warnings should adequately disclose hazards of a product so that consumers and users may make an informed decision whether or not to purchase or to use the product.

The determination of whether a duty to warn exists is a question of law.  
Mazikoske v. Firestone Tire & Rubber Co.
, 149 Ill. App. 3d 166, 175, 500 N.E.2d 622, 628 (1986).  A duty to warn exists when there is unequal knowledge and the defendant, who possesses superior knowledge about the hazard and the risks of encountering that hazard, knows or should know that harm might occur if no warning is given.  
Cozzi v. North Palos Elementary School District No. 117
, 232 Ill. App. 3d 379, 384, 597 N.E.2d 683, 686 (1992).  Ordinarily, when a danger is obvious and universally appreciated, there is nothing to be gained by giving a warning and, therefore, none is required.  
McColgan
, 212 Ill. App. 3d at 701, 571 N.E.2d at 818.

In this case, the circuit court held that a reasonable teenager would appreciate the open and obvious danger of jumping on a trampoline.  The court expressed its reasoning in a docket entry.  There, it stated that the facts in the pending case were indistinguishable from those in 
Ford ex rel. Ford v. Nairn
, 307 Ill. App. 3d 296, 717 N.E.2d 525 (1999), and for that reason the court felt bound to follow that decision.

On appeal, both defendants argue that the 
Ford
 decision controls.  We respectfully disagree.  Earlier in this opinion, we purposely cited several sections of the Jumpking user's manual.  In several sections Jumpking states that the trampoline should only be used under the strict supervision of qualified instructors.  In other sections Jumpking directs that the user obtain instruction on basic, fundamental skills of 
jumping and landing
 in order to use the product safely.  These sections of the manual were not mentioned in the 
Ford
 case, and thus, we conclude that they were either not provided to or not considered by our colleagues in the fourth district.

In our view, these instructions and warnings demonstrate that the manufacturer possessed knowledge superior to the purchasers and users about the characteristics of its product and, more importantly, the risk of harm to ordinary consumers who purchased the trampoline as a backyard toy.  Based upon the warnings and instructions contained in the user’s manual, it may be reasonably inferred that Jumpking recognized that because of the performance characteristics of its product, there was a greater risk of injury to users who did not have formal training in gymnastics techniques and who did not have certified instructors available to supervise them.  Jumpking also recognized that its product was being sold to uninformed consumers for use as a recreational toy.  It is also reasonable to infer that ordinary consumers purchased Jumpking trampolines as recreational toys for informal use at home and that they were not aware that the product was only to be used under the direct supervision of a certified instructor and that the lack of proper instruction in basic skills, such as bouncing and landing, was the single greatest cause of injury.

Though certain recognized hazards associated with trampoline jumping may be considered open and obvious depending on the circumstances, we doubt that recreational users appreciate the hazards and the risk of injury posed by the thrust capacity of the trampoline mat and appreciate that the risk and severity of the injury is reduced when the user is instructed on fundamental landing techniques to manage that impact.  The instructions and warnings demonstrate that the consequences of encountering these hazards are not obvious and are not appreciated or understood by foreseeable purchasers and users.  Therefore, to the extent that the 
Ford
 decision declares that all dangers of recreational trampoline use are open and obvious, we do not concur.

Whether this product is unreasonably unsafe for use as a backyard toy, whether the warnings are adequate to advise the purchasers and users of the hazards and risks of injury posed to untrained and unsupervised users, whether the instructions are ambiguous or otherwise inconsistent with the manner in which the product is commonly used, and whether there was adequate information to permit the consumer to adequately assess the risks and benefits of the product and to make an informed choice whether to purchase or use the product are questions of fact and are not before us.

Based upon this record, Jumpking had a duty to warn because it had superior knowledge of the hazards and the risks of harm that its product posed to foreseeable users.  Because Jumpking had superior knowledge, it had a duty to warn purchasers and users of the hazards and the risk of harm that they may encounter while using its product.  Therefore, we find that the trial court erred in granting summary judgment in favor of Jumpking.

The next question is whether Mr. Eaton had a duty to warn Kathleen Sollami of the dangers of jumping on the trampoline.  The duty owed to entrants on a landowner's property under the Premises Liability Act is reasonable care under the circumstances.  740 ILCS 130/2 (West 1996).  Persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious.  
Bucheleres v. Chicago Park District,
 171 Ill. 2d 435, 445, 665 N.E.2d 826, 832 (1996); 
Ward v. K Mart Corp.
, 136 Ill. 2d 132, 148, 554 N.E.2d 223, 227 (1990).  In this case, we have already concluded that certain risks of harm associated with jumping on the trampoline were not open and obvious.  Accordingly, summary judgment was not proper on that basis.

The property owner's duty to warn is premised upon the possessor's superior knowledge of a hazardous condition.  
Stephen v. Swiatkowski
, 263 Ill. App. 3d 694, 703, 635 N.E.2d 997, 1004 (1994).  According to the record, Mr. Eaton had access to the warnings and instructions for use contained in the user's manual.  Mr. Eaton's duty to warn and corresponding liability are tied to the adequacy of the warnings and instructions for use contained in the user's manual.  Whether Kathleen appreciated the hazard at issue and the risk of encountering it, whether Mr. Eaton knew or should have known of the hazard, and whether his actual or constructive knowledge of that hazard was superior to Kathleen's are questions of fact.  See 
Schellenberg v. Winnetka Park District
, 231 Ill. App. 3d 46, 52, 596 N.E.2d 93, 95 (1992).  The adequacy of the warnings and instructions and whether they reached foreseeable purchasers and users are also questions for the trier of fact.  Therefore, summary judgment was not appropriate.

Accordingly, the trial court's decision to grant summary judgment in favor of defendant Jumpking and defendant Lawrence Eaton is reversed, and the cause is remanded for further proceedings.

Judgment reversed; cause remanded.

CHAPMAN, P.J., concurs.

JUSTICE WELCH dissenting:

I believe that the potential danger involved with using the trampoline is "open and obvious."  I agree with the 
Ford
 analysis and believe it is applicable to the instant case.  
Ford ex rel. Ford v. Nairn
, 307 Ill. App. 3d 296 (1999).  Therefore, I respectfully dissent.

                                      NO. 5-99-0789

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

KATHLEEN M. SOLLAMI, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Williamson County.

)

and )  No. 98-L-32

)

PHILLIP SOLLAMI, )

)

     Plaintiff and Counterdefendant-Appellant, )

)

)

)

LAWRENCE EATON,       )

)

     Defendant and Counterplaintiff-Appellee, )

)

and                 )

)

ICON HEALTH AND FITNESS, INC., a )

corporation, d/b/a JUMPKING, INC., a )

corporation, )  Honorable

)  Phillip G. Palmer,

     Defendant-Appellee. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: March 21, 2001 

___________________________________________________________________________________

Justices
: Honorable Gordon E. Maag, J.

Honorable Charles W. Chapman, P.J.,

Concurs

Honorable Thomas M. Welch, J.,

Dissents

___________________________________________________________________________________

Attorneys
 John Womick, Womick Law Firm, Chtd., 1100 So. Main Street, P.O. Box 1355,

for
 Carbondale, IL 62903 (for Kathleen M. Sollami and Phillip Sollami)

Appellants
 

___________________________________________________________________________________

Attorneys
 James B. Bleyer, Bleyer and Bleyer, 601 West Jackson Street, P.O. Box 487, Marion,

for
 IL 62959-0487 (for Lawrence Eaton)

Appellees

Stephen J. Maassen, 401 Market Street, P.O. Box 130, Alton, IL 62002 (for Icon Health and Fitness, Inc., doing business as Jumpking, Inc.)

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 03/21/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.